KARNO-SMITH CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14619.   Promulgated September 21, 1928.

*Frederick Schwertner*, *Esq.*, and *J. S. Trunon*, *C. P. A.*, for the petitioner.

*J. L. Backstrom*, *Esq.*, for the respondent.

450

454

OPINION.

TRAMMELL: For the year 1920, the petitioner filed an appropriate return of its income and claimed classification as a personal service corporation. The respondent denied such classification to the petitioner, and determined the deficiency involved herein. The correctness of the respondent's action in this regard forms the basis of the sole issue presented, except that the petitioner alleges that, in the event it is held not to have been a personal service corporation in 1920, it is entitled to special assessment of its profits tax for that year under the provisions of sections 327 and 328 of the Revenue Act of 1918.

In section 200 of the Revenue Act of 1918, the term "personal service corporation" is defined as meaning "a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor." And in section 218 (e) of said Act, it is provided that "personal service corporations shall not be subject to taxation under this·title, but the individual stockholders thereof shall be taxed in the same manner as the members of partnerships"

It is clearly established by the evidence that the petitioner's income for 1920 was derived primarily through the activities of the principal owners or stockholders, who were themselves regularly engaged in

the active conduct of the corporation's affairs, and the respondent makes no contention on these points. Thus, the petitioner possessed the first two qualifications prescribed by the statute as constituting a personal service corporation. However, the respondent contends that the petitioner is not entitled to personal service classification as claimed by it, for the reason that capital invested in its business in 1920 was a material income-producing factor, and hence it fails to meet the third requirement of the statute.

The respondent's contention, as set forth in his brief, is predicated largely upon the argument that the amount of the authorized capital stock, or the possession of capital assets by a corporation, is an element in determining its right to exemption from taxation as a personal service corporation. The respondent urges that—

To argue that the use of capital was not necessary and material in the production of the plaintiff's income is to ignore the fact that the officers of the petitioner as prudent business men saw fit to increase the capitalization of petitioner to $500,000 during the year 1920, of which $80,000.00 was issued and on October 8, 1920, paid $35,000.00 in cash for stock. This caused an additional expense to petitioner in state taxes and fees, and if invested capital was unnecessary in the production of income, there could have been no reason for incurring the expense of increased capitalization. Manifestly such actions can be accounted for only on the hypothesis that the use of such capital in the business as it was in fact carried on was necessary for the production of its income.

We are not impressed by the cogency of this argument. While it is undoubtedly true that, in the case of a corporation seeking personal service classification, an unduly large authorized capital stock or the possession of capital assets in large amounts would raise suspicion and invite a careful scrutiny to ascertain whether the use of capital in the business was a material income-producing factor, such facts of themselves are not material. The only inhibition of the statute is that capital, whether invested or borrowed, must not be a material income-producing factor, and it is with the consideration of the facts on this point that we are directly concerned.

An analysis of the facts in evidence shows that this petitioner was incorporated January 10, 1920, with an authorized capital stock of $75,000, which, on August 13, 1920, was increased to $500,000. On January 27, the amount of $2,000 in cash was paid in for stock, and on various subsequent dates up to and including July 21, 1920, additional amounts in cash aggregating $18,500 were paid in for stock. On October 8, 1920, an additional $35,000 in cash was paid in for stock, which was all the cash paid in for stock in 1920.

On October 7, 1920, the four stockholders executed notes to the petitioner in the total amount of $100,000 for additional stock, but these notes were neither paid during 1920 nor discounted at the bank.

They did not constitute working capital of the petitioner, and are still in its possession. In determining the deficiency herein, the respondent computed the petitioner's invested capital at $53,500, and it is thus apparent that the respondent refused to recognize said notes as capital assets.

Of the $18,500 cash paid in for stock on and prior to July 21, 1920, practically all was expended by the petitioner in purchasing office furniture and fixtures, and machinery and equipment, which was used in its business to the extent and under the circumstances set out in our findings of fact above.

The principles by which we may determine whether the use of capital in a given case was such as to defeat personal service classification, have been clearly defined by the courts.

In *Park Amusement Co.* v. *McCaughn*, 14 Fed. (2d) 553, the court said:

> The real criterion is in the fact finding of whether money as an income producer played any real and substantial part in producing the income to be taxed.

In *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410 (affd. 15 Fed. (2d) 1013), the court, in its opinion, said:

> We come then to the second element of the definition; that is, whether capital (invested or borrowed) is a material income producing factor. Here the test is not exclusively whether the corporation bought and sold on its own account, or did a strictly commission business; it is whether it necessarily requires capital for, and in fact uses it in, the conduct of the business. If the nature of the business is such that it could not be carried on at all without the constant use of capital, and such use of capital plays a vital part in the successful conduct of the business, it can not be said that its use in the business is merely incidental.
>
> \* \* \* \* \* \* \*
>
> So also under the Revenue Act of 1918, it is necessary to consider the kind of service rendered by the corporation, as assisting in the determination of whether the use of capital ordinarily plays an important part in rendering such service, and then to consider whether, in the particular case under consideration, the use of capital was necessary, and whether it was in fact used. \* \* \* If capital was used, the inquiry is whether such use was vital and necessary to the conduct of the business, or merely an incidental convenience for more orderly fiscal operation.
>
> Otherwise expressed, where the intrinsic nature of the business is the rendition of a "service" to another, as in the case of real estate brokers, lawyers, doctors, or even artisans, who need not supply materials, the use of capital is merely incidental. The individual thus sells only experience, knowledge, or skill, intangible in its nature and existing independent of capital, either in the sense of money or other tangible property. But where the business is manufacturing or mercantile in its nature, and the individuals conducting it must of necessity procure and use, and do so procure and use for its conduct, either funds or merchandise, such capital becomes a material income-producing factor, and the source from which it is procured is immaterial under the Act of 1918.

That the business of the petitioner in this proceeding, during the year 1920, was in its nature essentially the selling of the personal services of its four stockholders is irrefutably established by the proof. They were architects and construction engineers, with many years' experience in the designing and erection of industrial buildings.

During 1920, the petitioner entered into 12 contracts or agreements with owners relating to the erection of buildings, all of which contracts were procured through the personal contact and solicitation of its stockholders and because of the peculiar nature of the services to be rendered by them.

The stockholders conferred with the owners regarding their requirements, and designed buildings best suited to their needs. Detailed plans and specifications were then prepared, the necessary labor hired and materials purchased by the petitioner for the owners, and the construction of the buildings supervised by its stockholders. In all these matters, the petitioner acted as the agent or employee of the owner. In purchasing material, it was stated on the order form for whom it was purchased, and it was distinctly understood that the owner was to be responsible for the payment of the bill.

While it is true that bills for material were paid for with checks of the petitioner, substantially all such payments were made from funds advanced to the petitioner for that purpose by the owners, solely as a matter of convenience and to relieve the owners of the burden of keeping detailed records of the transactions. The owners advanced funds to the petitioner to meet not only the payment of bills for material, but to cover the pay rolls for labor, including the cost of workmen's compensation insurance required under the New Jersey law. At December 31, 1920, the petitioner had in its possession unexpended funds in the amount of $1,677.64 so advanced by owners. For these services the petitioner received either a flat fee, based upon the cost of the building, or a commission of 10 per cent of the cost of the labor and material.

The petitioner obtained no contracts by competitive bidding; there was no time specified in any of its contracts for the completion of the work, and there was no penalty or bonus clause in any agreement. It did not guarantee the cost of the buildings, and was not required to give any bond. The fees and commissions received by it represented compensation for the personal services of its stockholders, with the exception of a commission of 1 per cent paid under three of the contracts as rental for the use of machinery and equipment furnished by the petitioner.

The aggregate amount of income derived by the petitioner in 1920 from rental of machinery and equipment was $1,084.21. It had invested in such machinery and equipment $17,496.48, and in a stor-

age shed the amount of $565.68, or a total investment in capital assets used in the business of $18,062.16.

The income received by the petitioner from this source did not represent any profit to it, as the total amount received was less than the depreciation sustained. It is further indicated by the record that the possession of these assets did not contribute to the procurement of contracts, and was not essential to the successful conduct of the petitioner's business, but was wholly incidental thereto.

In these circumstances, we are unable to concur in the conclusion of the respondent that invested capital was a material factor in the production of the petitioner's income. It is our opinion, therefore, that the petitioner is entitled to exemption from taxation as a personal service corporation for the year 1920.

Reviewed by the Board.

*Judgment of no deficiency will be entered.*