GARROW, MacCLAIN & GARROW, Inc., v. BASS.

No. 8187.

Circuit Court of Appeals, Fifth Circuit.

March 3, 1937.

R. C. Fulbright and Carl G. Stearns, both of Houston, Tex., for appellant.

Joseph M. Jones, Sp. Asst. to Atty. Gen., Lester L. Gibson, Atty., Dept. of Justice, of Washington, D. C., and W. R. Smith, Jr., U. S. Atty., and H. W. Moursund, Asst. U. S. Atty., both of San Antonio, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The plaintiff-appellant is a Texas corporation engaged during 1920 and 1921 in the handling of cotton on commission at Houston, Tex. It filed its income tax returns for fiscal year periods January 1 through June 30, 1920, and July 1, 1920, through June 30, 1921, claiming status as a personal service corporation. This claim was disallowed by the Commissioner, who assessed ordinary corporation taxes. The taxpayer asked abatement, reasserting that it was a personal service corporation, but, in the alternative, asked special relief as to the amount of the tax under section 327 of the Revenue Act of 1918 (40 Stat. 1093). The first contention was denied, but the special relief was granted and a partial abatement made of the taxes assessed on each return. The taxes so fixed were paid January 22, 1929, under protest, and a refund being denied, suit for their recovery was brought in the District Court against the collector. His answer set up a want of jurisdiction in the court because of the partial abatement of the taxes under section 327, and a general denial. The case was by stipulation tried by the court without a jury, and special findings of fact were made. The court held it had jurisdiction, and gave judgment for the collector.

The bill of exceptions flagrantly disregards our rule X, par. 2. The first 16 printed pages, beginning with the morning salutations of court and counsel, consist of colloquy, explanations, and argument which have no place in a bill of exceptions. The next 39 pages present a properly condensed narrative of the testimony. There follow

132 pages of documents and figures, the materiality of most of which is not apparent. The kernels of wheat are lost in the straw. Counsel, who understand what portions of documents introduced are material, ought to put only that portion into the bill, excluding the remainder or showing its purport by brief recitals. The appellate court is not bound to take the time and effort requisite to explore such an undigested mass. We are told that it was added on the insistence of appellee, but its propriety ought to have been submitted to the judge, who at last is responsible for the contents of a bill of exceptions.

■ The District Court has general jurisdiction to entertain and try the complaint of a taxpayer that the collector has compelled him to pay taxes illegally assessed or collected. That the taxpayer by asking special treatment under section 327 of the Revenue Act of 1918 may have waived further contest of the amount assessed is a plea in bar rather than to the jurisdiction. It does not mean that the court cannot inquire, but that in its inquiry it should find that the plaintiff has no available ground of complaint. An appellate court may disregard error thereabout unless properly brought before it. We are therefore asked to hold that since there is no cross-appeal, the collector cannot attack the ruling on it. What may be done without a cross-appeal was very recently considered in Morley Construction Co. v. Maryland Casualty Co., 57 S.Ct. 325, 81 L.Ed. ——, but with special reference to equity decrees. What happened in the present case is that a separate plea was ignored by the court and only the answer considered, as above stated. The court found the facts to be as contended by the answer, but ruled in point of law that the court had jurisdiction. With that ruling we agree. That the special treatment accorded the taxpayer at its request involves a waiver of or estoppel against any further contest was not asserted in the answer nor was that question decided by the court; but if such were the

necessary legal consequence, we see no reason why we should not so declare as a good ground for the general judgment rendered for the collector.

■■ We are of opinion that when such special treatment is asked and accorded, the tax thus fixed is as to amount unassailable. The court cannot substitute its judgment for the Commissioner's in the selection for comparison of other taxpayers similarly circumstanced, nor in determining what would be fair as a result of the comparison. If the Commissioner proceeds according to law, his judgment on these matters is intended to be final. Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 561, 48 S.Ct. 587, 72 L.Ed. 985; Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S. Ct. 413, 77 L.Ed. 921. He has sometimes exacted agreements which limit further contention. Michigan Iron & Land Co. v. United States (Ct.Cl.) 10 F.Supp. 563, 569. There was no agreement here, but the taxpayer stood stoutly to its contention that it was to be classed under section 200, (40 Stat. 1058) and was not liable at all for the taxes imposed on corporations. It asked that the amount of its tax be specially fixed only if it should be held taxable as a common corporation. It had to go through with assessment, payment, and request for refund in order to get into court on the main question of its liability for corporation taxes, and it was entitled to reserve this question unprejudiced. If it is liable to be taxed as a corporation, the amount of that tax has been finally fixed and is in fact not now questioned. But if it is not thus liable, it may have the court so to adjudge.

■ The statute defining personal service corporations is quoted in the margin.[1] Three essentials are stated: (a) Its income is to be ascribed primarily to the activities of the principal stockholders (b) who are themselves regularly employed in the active conduct of its affairs and (c) capital, whether invested or borrowed, is not a material income-producing factor. The first

[1] "Sec. 200. That when used in this title—* * *

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive." 40 Stat. 1058, 1059.

two are fully met in this case. The controversy is over the third. Regulation 45, Art. 1523, interprets it in these words: "(c) In which the employment of capital is not necessary or is only incidental." The court found that capital here employed was a material income-producing factor, and that its use was necessary and not merely incidental. The appellant asserts that the regulation does not follow the statute, and that the statute means that a material part of the income must be produced by the capital. It admits that it used capital in its business, and that some capital was necessary, but says that it derived no income directly from it and that therefore its capital used was not a material income-producing factor. What is not necessary, or only incidental, is not material, so that in a general way the statute and regulation agree; but we think the words of the statute are specially significant. They are not "whose income is not produced by capital to a material amount," but "in which capital is not a material income-producing factor." The appropriate meaning of factor is "one of the elements, circumstances, or influences that contribute to produce a result." Webster International Dictionary. Capital may be an element or circumstance or influence that contributes to produce income without directly yielding any. If capital in substantial amount contributed to and materially assisted appellant in making its income, then appellant is not entitled to the tax privilege of a personal service corporation. We find in the income received dividends on compress stock, but we treat that investment as incidental, since it does not appear that the stock ownership particularly affected the business. The appellant's main income came from commissions of $1.25 per bale on all cotton received and sold by it as a cotton factor, and a fixed monthly charge of 50 cents on each bale held, which covered storage, insurance, and keeping up with the cotton and informing its owners about markets and the like. Most of the cotton was held several months, so that the income from the latter source was the larger. Cotton was habitually shipped freight collect, and the factor advanced the freight charges without interest and in its own name made general arrangements for warehousing and insuring stored cotton. The freight advanced and the monthly charges were taken out of the proceeds of each owner's cotton when sold. The factor had a fixed capital of $50,000, and, in addition, employed from twelve to twenty-five thousand dollars belonging to its stockholders. Some of this was used in the advances for freight and insurance and some in loans made to shippers on their cotton. Many but not a majority of shippers desired advances. To some, the factor would send its checks and when they reached the bank covered them if necessary by notes given to the bank, but in settling with the customer charged only the interest paid the bank. By others, bills of lading were attached to drafts made through the bank on the factor. The factor would accept the drafts and the bank would then remit money to the shipper, warehouse receipts being later substituted for the bills of lading as security. When the cotton was sold, the drafts with interest were taken up from the bank by the factor and the amount paid by it deducted from the proceeds. The money thus loaned to customers ran to large figures. During the tax periods, the amount advanced directly by the factor to its customers was $907,100, and the amount advanced on drafts through the bank was $741,113. The amount outstanding at any one time varied, but would average several hundred thousand dollars. We think loans by both methods were a use of capital by the factor. The money for those made by check was the factor's money, either its original capital or borrowed from the bank. The drafts were accepted by the factor and became its primary obligation before the bank advanced any money on them. In legal effect the bank loaned the money to the factor and paid it out to the factor's customer. It is too clear for argument that all this money was put out by the factor for business reasons. Persons needing advances would not otherwise have shipped cotton to it to hold and sell. If without capital, invested or borrowed, the factor could as a personal service have arranged loans at the bank solely on the credit of distant shippers, it was not done that way. The conclusion of the District Court that this capital contributed materially as a factor in producing the income from commissions and monthly charges on cotton is well founded. It further appears that the monthly charges on stored cotton exceed the cost of storage and insurance and other outlays. This excess is in part a reward for services, but may contain also a profit on the freight advanced and the expenses incurred, although the witnesses were unable to estimate its amount. The District Court was warranted in finding that capital,

**578**

both invested and borrowed, was a material income-producing factor in the taxpayer's business. Atlanta-Southern Dental College v. Commissioner (C.C.A.) 50 F.(2d) 34.

Judgment affirmed.