DAVID M. TREATMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Treatman v. Commissioner
Docket No. 9244-78.
United States Tax Court
T.C. Memo 1981-74; 1981 Tax Ct. Memo LEXIS 668; 41 T.C.M. (CCH) 934; T.C.M. (RIA) 81074; February 23, 1981. *668 Herbert L. Reff, for the petitioner. Darwin R. Thomas, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in the Federal income tax of the petitioner: Taxable Year
Deficiency
1974
$ 57,660
1975
27,106
Due to concessions, the only issue is whether capital was a material income-producing factor in petitioner's mail order business during the taxable years in question. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The petitioner timely filed head of household Federal income tax returns for his 1974 and 1975 taxable years. He resided in Los Angeles,California, when he filed his petition herein. During 1974 and 1975, petitioner owned and operated, as a sole proprietorship, a mail order business. He devoted a substantial amount of time (seven days per week, from ten to sixteen hours per day) to the conduct of the business. Petitioner would travel throughout the United States locating merchandise which he considered suitable to market through his business and arranged with the manufacturer *669 to have the goods ready for prompt sale and shipment if orders for them were received from petitioner's customers. No one assisted him in this activity. After lining up suitable merchandise, petitioner would carefully and laboriously design a brochure advertising the products he wished to sell. Designing the brochure made extensive demands upon petitioner's creative and artistic capacities, requiring him to "convey [his] personal creative ability into an art form * * *." No one assisted petitioner in designing the brochure. The brochure was then sent to the printer and printed copies were mailed out to potential customers whose names petitioner had obtained by renting mailing lists. Petitioner used employees and mailing equipment to assist him in mailing the brochures. Orders received by petitioner in response to the brochures were prepaid. Petitioner himself processed the orders. He opened the mail, deposited the checks, and then acquired the merchandise which had been ordered by his customers from the manufacturer. The manufacturer would ship the merchandise to petitioner who employed shipping clerks to mail the goods to his customers in fulfillment of their orders. In addition *670 to the employees who operated the mailing equipment and the shipping clerks, petitioner employed a woman who handled correspondence with customers. Petitioner acquired, in February 1974, a building and the land upon which it stood for use in his mail order business. As stated previously, he also owned mailing equipment. The unaudited balance sheets of petitioner's business as of December 31, 1973 and 1974 appear below: ASSETS
Current Assets
12/31/73
12/31/74
Cash
$ 589.55
$ 93.46
Loans Receivable
7,500.00
84,000.00
Short Term Investments
0
100,093.50
Inventory
1,016.35
34,922.00
Prepaid Expenses
5,424.32
4,266.50
TOTAL CURRENT ASSETS
$ 14,530.22
$ 223,375.46
Fixed Assets [1]
Land
0
$ 40,000.00
Building & Improvements
0
79,610.56
Equipment
0
65,323.97
Auto
0
7,220.00
$ 192,154.53
Less: Accumulated Depreciation
21,437.12
FIXED ASSETS at NET BOOK VALUE
$ 18,164.07
$ 170,717.41
Deposits
$ 1,125.00
0
TOTAL ASSETS
$ 33,819.29
$ 394,092.87
LIABILITIES & NET WORTH
Current Liabilities
Loan Payable - City Nat'l Bank
$ 10,000.00
$ 100,000.00
Accounts Payable
12,868.86
52,273.47
Payroll Taxes Payable
1,022.02
0
Current Portion of Long Term Debt
0
2,879.04
TOTAL CURRENT LIABILITIES
$ 23,890.88
$ 155,152.51
Long Term Debt
Mortgage Payable
$ 0
$ 54,099.28
Second Trust Deed Payable
0
20,272.50
$ 0
[2]$ 74,369.78
Less: Current Portion
2,879.04
NET LONG TERM DEBT
$ 0
$ 71,490.74
Net Worth
9,928.41
167,449.62
TOTAL LIABILITIES & NET WORTH
$ 33,819.29
$ 394,092.87
*671 Sales and expense data of the mail order business for 1974 and 1975 are shown below: 1974
1975
Sales
$ 1,735,286.00
$ 861,314.00
Less: Cost of Goods Sold
429,882.00
206,229.00
Gross Margin
$ 1,305,404.00
$ 655,085.00
Expenses: Postage
308,181.00
147,510.00
Rental of mailing lists
209,275.00
68,849.00
Depreciation
12,675.00
10,726.00
Salaries & wages
43,710.00
24,085.00
Advertising
112,619.00
56,738.00
Other expenses
141,126.00
78,069.00
Total Expenses
$ 827,586.00
$ 385,977.00
NET PROFIT
$ 477,818.00
$ 269,108.00
Typically, petitioner's inventories of goods were minimal in relation to his sales, averaging only from $ 3,000 to $ 4,000. The December31, 1974, inventory was abnormally high because petitioner had just purchased merchandise at a substantial discount fora forthcoming mailing. Petitioner treated all of his net profits for the years in issue as "earned income" for purposes of computing *672 his maximum tax under section 1348, Internal Revenue Code of 1954. [3] The Commissioner determined that none of the net profits could be treated as earned income and, hence, that none of petitioner's taxable income was subject to the maximum tax provisions. OPINION For the taxable years before us, only "earned income" qualified for maximum tax benefits. Section 1348 defined "earned income" as follows: SEC. 1348. FIFTY-PERCENT MAXIMUM RATE ON EARNED INCOME. (b) DEFINITIONS.--For purposes of this section-- (1) EARNED INCOME.--The term "earned income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b) * * *. Section 911(b) provided: (b) DEFINITION OF EARNED INCOME.--For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered * * *. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, *673 under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. Thus, if capital were a material income-producing factor in petitioner's mail order business, only 30 percent of his net profits therefrom may be considered earned income for purposes of the maximum tax computation. Section 1.1348-3, Income Tax Regs., provides general guidelines for determining when capital is a material income-producing factor and a specific example: SEC. 1.1348-3. DEFINITIONS. (a) Earned Income.-- (3) Earned income from business in which capital is material. (ii) Whethercapital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material *674 income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. (6) Examples. The application of this paragraph may be illustrated by the following examples: Example (2). In his unincorporated business as a real estate broker, which he conducts on a full-time basis, A performs substantial personal services, including solicitation of home buyers and sellers, escorting prospective buyers on house visits, arranging appraisal, financing, and legal services, and other related tasks. In the course of conducting such business, A often finances sales of real estate with his own capital, makes all the necessary arrangements *675 incident to such financing, and a substantial portion of the gross income of the business consists of interest income from such financing. Under these facts and circumstances, both personal services and capital are material income-producing factors in A's real estate business within the meaning of paragraph (a)(3) of this section since the financing of real estate sales is an integral part of the entire business. Accordingly, A's earned income from his real estate business is limited to a reasonable allowance as compensation for the personal services A actually renders, but not in excess of 30% of the net profits from the business, including the interest income derived from financing sales of real estate. Petitioner argues that he was merely a "broker" of merchandise, an intermediary between buyer and seller, and that capital was only incidental to his operation. Petitioner cannot, however, bring himself into the "professional fee" concept discussed in the regulation because he sold goods and not services. Even if he could somehow be viewed as a "chattel broker," we would find the example dispositive against him because, in effect, he "financed" the sale of merchandise by buying *676 and reselling it, much as the real estate broker in the example financed the sale of homes. Compare these facts with Bruno v. Commissioner,71 T.C. 191 (1978)(bail bonds person's use of real estate to secure bonds written was merely incidental to primary business of providing services). We have no doubt that petitioner's personal services accounted for far more than 30 percent of his business' net profit, but cannot escape the conclusion that capital was also a material income-producing factor. While it is true that petitioner's inventories were minimal, other capital sources of income are readily apparent. Perhaps the most important were the lists of names which petitioner rented. The rentals he paid for them were substantial, indicating that they had a high value in relation to sales. Petitioner also made heavy use of capital in the form of customer prepayments of orders which he used to finance his purchase of the ordered goods. Absent the prepayment arrangement, petitioner would have had to seek alternative financing of his purchases, either through the manufacturers or banks. See Moore v. Commissioner,71 T.C. 533 (1979)(capital was a material income-producing factor *677 in retail grocery business). The Commissioner's determination that none of petitioner's net profits may be treated as earned income is therefore clearly erroneous. Under the statutory provisions quoted above, however, petitioner is entitled to treat only 30 percent of his net profits as "earned income." While we do not here pass on the wisdom of this somewhat arbitrary limit, we note that, for taxable years commencing after 1978, Congress has removed it. Sec. 442(a), Revenue Act of 1978, Pub.L. 95-600, 92 Stat. 2878. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Fixed assets were not separated into categories on the December 31, 1973, sheet. ↩
2. This figure should actually be $ 74,371.78 rather than the $ 74,369.78 which appears on petitioner's balance sheet. Likewise, the amount listed for NET LONG TERM DEBT should be $ 71,492.74 and TOTAL LIABILITIES & NET WORTH should be $ 394,094.87.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue, unless otherwise noted.↩