STANLEY O. GULLION AND EDITH GULLION, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gullion v. Comm'r
Docket No. 549-81. United States Tax Court
T.C. Memo 1982-106; 1982 Tax Ct. Memo LEXIS 640; 43 T.C.M. (CCH) 694; T.C.M. (RIA) 82106; March 3, 1982. William Sidney Smith, for the petitioners. Robert M. Fowler, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency *641 of $ 5,083 in petitioners' Federal income tax for the year 1977. The only issue for decision is whether, for purposes of section 1348, [1] capital was a material income-producing factor in petitioner Stanley O. Gullion's concrete flatwork business. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Stanley O. Gullion and Edith Gullion (petitioners) are husband and wife who were residents of Des Moines, Iowa, when they filed their petition in this case. They filed a timely joint Federal income tax return for 1977. During 1977 Stanley O. Gullion (hereinafter referred to individually as petitioner) operated a sole proprietorship as a concrete flatwork contractor or subcontractor, laying various concrete flat surfaces such as driveways, parking lots and floors. Petitioner is a skilled artisan who developed his trade through years of practice and experience. The total capital used by petitioner in starting his *642 business was $ 550. Petitioner bids some jobs with labor only and some with labor and materials provided. The laborers employed by petitioner provide their own hand tools. Generally, when the petitioner bids jobs which include materials the contractors will request him to also bid where they supply the materials, and then the contractor will choose between the two bids. With respect to any significant job the petitioner has an informal agreement with a concrete company as to the responsibility and liability for labor and concrete. Petitioner maintains no inventory of concrete or other items except incidental scrap lumber retrieved from a job. On relatively large jobs the concrete supplier is responsible for and runs the risk of nonpayment for the concrete; and petitioner is responsible and runs the risk of lost payment relating to labor on such projects. Petitioner is required to pay the ready-mix company for the concrete products only as his customers pay him on the jobs for which he has bid materials. Petitioner is never paid for a project prior to commencing work. He is paid either thirty days after the work is completed or every thirty days on a progress payment *643 basis. Petitioner does not hold himself out nor does the public perceive him as selling concrete to others. Petitioner may retain part of the contractor discount when he supplies the materials. Petitioner incurs additional costs when he supplies the materials due to the increase in his liability insurance premium (based on gross receipts), the extra labor involved in supervising the material and the additional risk involved where he is responsible for material. When petitioner supplies the materials the usual compensation, on a gross basis, he receives on the concrete is the discount which was typically $ 2 per yard during 1977. Concrete averaged $ 40 per yard in that year. Petitioner is entitled to the discount on the concrete regardless of the time lag in payment and is not subject to penalties for late payment. Concrete companies with which petitioner works do not add penalties for late payment to his bills. The concrete companies with which he works routinely run credit checks on petitioner's customers so that both petitioner and the concrete supplier are protected against loss. Petitioner has experienced some losses and in some such cases he was responsible *644 for the labor loss and the concrete supplier was responsible for the concrete loss. Petitioner employs labor as his contracts require and his entire labor force is paid on an hourly basis. No one is on his payroll when projects are not currently in progress. During 1977 the petitioner's business worked on 183 projects, or jobs, and had gross receipts from those jobs of $ 606,013. His business provided labor in 105 of the 183 jobs worked on in that year, and it had gross receipts of approximately $ 202,000 from the 105 jobs. His business was responsible for labor and materials in 78 of the 183 jobs that it worked on during 1977, and it had gross receipts of approximately $ 404,000 from the 78 jobs. During 1977 the petitioner's business used depreciable equipment the total cost of which was $ 42,722, for which it claimed a depreciation deduction in the amount of $ 5,806. The adjusted basis of petitioner's depreciable equipment, after claiming the depreciation deduction for 1977, was $ 23,286. During 1977 the petitioner's business had equipment rental and repair expenses of $ 11,255, expenses for small tools and supplies of $ 3,940, and truck expenses of $ 7,756. *645 Petitioner's business incurred expenses during 1977 of $ 182,137 for cement and $ 19,851 for sand, lumber, and other materials. Petitioner's business did not pay for concrete purchased from ready-mix companies until petitioner was paid for the job in which the concrete was used. It is necessary for petitioner's business to use concrete and related materials such as lumber and sand to perform the job of laying concrete flatwork. In his notice of deficiency dated November 7, 1980, respondent determined that both personal services and capital are material income-producing factors in petitioner's business and, therefore, his personal service net income in 1977 could not exceed 30 percent of the net profit of the business. Consequently, the maximum tax on earned income under section 1348 was not allowed. OPINION Section 1348 [2] generally limits the maximum rate on personal service income to 50 percent. Personal service income is defined for purposes of section 1348, as pertinent here, [3] as "earned income "within the meaning of section 911(b), which provides in part as follows: *646 For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. We must decide whether capital was a material income-producing factor in petitioner's concrete flatwork business, thereby limiting the amount qualifying for the benefits of section 1348 to 30 percent of the net profits of his business. Petitioner contends that he is eligible to use the maximum tax provisions because capital *647 was not a material income-producing factor in his business. He argues that he kept no inventory other than scrap lumber; that no customers invested in his business before the completion of his labor; and that he did not have any investment in the material cost of the concrete in place prior to receiving payment because the concrete companies bore the risk of loss on the materials. He further argues that his investment in plant, machinery and other equipment should not be viewed as substantial, but rather was incidental to the production of his income. To the contrary, respondent contends that the petitioner is limited under section 1.1348-3(a)(3)(i), Income Tax Regs., to treating only 30 percent of his net profits as earned income because capital was a material income-producing factor in his business. He asserts that the material part capital played in petitioner's business is evidenced by (1) the percentage of jobs and gross receipts attributable to jobs in which petitioner's business provided both labor and materials during 1977; (2) the capital investment and expenses of the business; and (3) the nature of the business and the product. We agree with the respondent. We have *648 previously addressed this issue in cases involving section 1348 and other provisions of the Code. See Bruno v. Commissioner,71 T.C. 191 (1978); Moore v. Commissioner,71 T.C. 533 (1979), where we followed the general rule that capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business. Capital is a material-income producing factor "if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment," and not if the "gross income of the enterprise consists principally of fees, commissions, or other compensation for personal services." Rousku v. Commissioner,56 T.C. 548, 551 (1971). This same approach is employed in section 1.1348-3(a)(3)(ii), Income Tax Regs., as follows: (ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, *649 as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. Under this test we think the petitioner's concrete flatwork business necessarily employed capital as a material income-producing factor. In the jobs worked by petitioner, his business either provides material and labor or labor only. Of the 183 jobs worked by petitioner in 1977, labor only was provided in 105 jobs, and both labor and materials were provided in the remaining 78 jobs. Petitioner's *650 gross receipts from the "labor only" jobs were approximately $ 202,000. By contrast, the gross receipts from the "labor and materials" jobs were approximately $ 404,000. Thus, even a superficial view of petitioner's business reveals the impact that capital has on his business. Two-thirds of his gross receipts were attributable to jobs in which both material and labor were supplied, and over 42 percent of his jobs during 1977 were "material and labor" jobs. In addition, the capital investments in, and the expenses of, petitioner's business underscore the importance of capital in the production of his business. During 1977 his business incurred expenses of $ 182,137 for cement and $ 19,851 for sand, lumber and other materials. The charges for such materials alone exceeded petitioner's total charges for labor during 1977; and the amount of these material expenses was approximately one-half of the gross receipts attributable to the jobs in which both labor and material were supplied and one-third of total gross receipts. Petitioner has attempted to downplay the impact of materials on his business by arguing that he would have preferred not to furnish any concrete, that little *651 profit existed in the inclusion of concrete in his bids, and that he was not required to pay for concrete until he was paid for the job. Irrespective of his alleged preference not to furnish concrete, the petitioner did in fact supply materials as well as labor in 42 percent of his jobs in 1977 and two-thirds of his gross receipts in that year were attributable to jobs in which both materials and labor were supplied. Even though the profit petitioner may have derived from the inclusion of concrete in his bids was relatively small, the controlling factor under section 1348 is not how efficiently petitioner ran his business, but whether "a substantial portion of the gross income of the business is attributable to the employment of capital in the business." Moore v. Commissioner,supra at 540; section 1.1348-3(a)(3)(ii), Income Tax Regs. Moreover, the fact that petitioner was not required to pay for his concrete until he received payment for the job, i.e., he had accounts with concrete companies, is in itself a form of capital. See and compare Treatman v. Commissioner,T.C. Memo. 1981-74. In addition to petitioner's expenditures for materials, *652 his business also had equipment rental and repair expenses of $ 11,255, expenses for small tools and supplies of $ 3,940, and truck expenses of $ 7,756. His business also used depreciable equipment during 1977 the total cost of which was $ 42,722 and a depreciation deduction for these capital items was claimed in the amount of $ 5,806. Finally, we think the very nature of petitioner's business and the product resulting from it undercut his attempts to minimize the element of capital in his business. While there is obviously skill involved in concrete flatwork, the capital nature of the work is apparent. Petitioner lays concrete flat floors, driveways, and parking lots. Such items are permanent and tangible with an intrinsic value. Although he contends that he prefers not to supply concrete or other materials, he admitted that, no matter who is the supplier, it is necessary for him to have those materials to do his job. Concrete flatwork thus must be viewed for what it is--a manufacturing or construction business which is capital in nature. In Moore v. Commissioner,71 T.C. at 539, this Court found that capital was a material income-producing factor in taxpayers' *653 grocery business, pointing to the role of inventory and depreciable assets in the business, although their "services were substantial and important in preparing and presenting the store's inventory for retail sale." While the petitioner here maintained no concrete inventory, due to its perishable nature, his purchases of concrete during the year 1977 were substantial, amounting to approximately one-third of his total gross receipts. In Rousku v. Commissioner,supra, a case involving section 911 rather than section 1348, we held that capital was found to be a material factor in the taxpayer's car repair shop since the sale of automobile parts that necessarily occurs in an auto repair business accounted for approximately 40 percent of gross receipts. In this case the concrete was just as effectively "sold" by petitioner in his "labor and material" jobs as were the auto parts in Rousku's car repair shop. And in the recent case of Gaudern v. Commissioner,77 T.C. No. 97 (December 21, 1981), we held that capital was a material income-producing factor where the taxpayer was in the business of selling bowling supplies at wholesale and at retail. Although *654 Mr. Gaudern through his business, Western Columbia, was not required to furnish capital to acquire inventory, we pointed out that "neither the regulations nor the cases under section 1348 have made the result turn on whether the capital was furnished by the taxpayer; the only question is whether capital was material in producing the income of the business." Slip Op. at 13. It is clear that the source of the capital has no significance. Petitioner cites two cases that make the distinction between active and passive income in support of his position, contending that his income was "active." But both of the cases are distinguishable from this case. In Tobey v. Commissioner,60 T.C. 227, 231 (1973), we stated in our opinion that "it is stipulated that capital was not a material income-producing factor." Thus, in Tobey we were not concerned with the issue here, but rather the broader issue as to whether the taxpayer's income was "earned income." Likewise, in Robida v. Commissioner,460 F.2d 1172 (9th Cir. 1972), affg. T.C. Memo. 1970-86, we were confronted with the broader issue as to whether to treat the taxpayer's income from his *655 special ability to manipulate slot machines as "earned income." The "active-passive" income test used in the Tobey and Robida cases is simply not appropriate to this case, where income was derived from a mix of labor and capital. The distinction between true personal service occupations [4] and businesses such as petitioner's concrete flatwork business, in which both capital and labor are material elements, was stated in United States v. Korczynski, an unreported case ( S.D. Ohio 1978, 42 AFTR 2d 78-5799, 5800, 78-2 USTC par. 9638), involving an electrical subcontractor and similar on its facts to the instant case: While it is true that all personal service business requires some capital, capital probably is not material in an occupation such as law or accounting, or entertainment, or sports. A taxpayer engaged in such occupations is essentially providing his talents, or his ability, or his ingenuity. When he has completed the services for which he has been retained, there is little, if anything, tangible that has intrinsic value. The most adroitly drawn contract is physically only a series of *656 typewritten pages with a negligible value. However, Mr. Korczynski was more than a purveyor of personal services. When he completed his activities, there remained in the home electrical wiring, panels, switchboxes, fixtures, plugs, and a skillfully prepared electrical system. To provide those tangible items, Mr. Korczynski was required to purchase them and to include them in his sale price. All in all, the cost of materials and supplies equalled fifty percent of Mr. Korczynski's gross receipts in 1972. It follows, therefore, that "the use of capital… [gave] character to a sizeable portion of" his operations in 1972. Edward P. Allison Company v. Comissioner of Internal Revenue,63 F.2d 553, 558 (8th Cir. 1933). Accordingly, this Court finds that capital was a material income producing factor in Mr. Korczynski's business in 1972. * * * Just as it did in the Korczynski case, the use of capital gave character to a sizeable portion of petitioner's business in 1977. The concrete and materials, and tools and the equipment used in the business are essential, not incidental, to the laying of concrete flatwork, and the product of petitioner's work--the parking *657 lots, driveways, and floors--are intrinsically valuable and tangible. Accordingly, we hold that for the purposes of section 1348 capital was a material income-producing factor in petitioner's concrete flatwork business. It therefore follows that only 30 percent of the net profits of petitioner's business qualifies for the benefits of section 1348. [5]
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩
2. SEC. 1348. 50-PERCENT MAXIMUM RATE ON PERSONAL SERVICE INCOME. (a) General Rule.--If for any taxable year an individual has personal service taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of-- (1) the tax imposed by section 1 on the highest amount of taxable income on which the rate of tax does not exceed 50 percent. (2) 50 percent of the amount by which his personal service taxable income exceeds the amount of taxable income specified in paragraph (1) of this subsection, and (3) the excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his personal service taxable income. (b) Definitions.--For purposes of this section-- (1) Personal service income.-- (A) In general.--The term "personal service income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b) or which is an amount received as a pension or annuity. ↩
3. The alternative meaning, inapplicable here, is defined in section 401(c)(2)(C) as "gains (other than any gain which is treated under any provision of this chapter as gain from the sale or exchange of a capital asset) and net earnings derived from the sale or other disposition of, the transfer of any interest in, or the licensing of the use of property (other than good will) by an individual whose personal efforts created such property."↩
4. See section 1.1348-3(a)(3)(ii), Income Tax Regs.↩
5. We note that the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, repealed section 1348 for years beginning after December 31, 1981.↩