**Everett V. HUTCHESON, Jr., and Jane R. Hutcheson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 80–510–N.

United States District Court,
M. D. Alabama, N. D.

March 30, 1982.

David B. Byrne, Jr., Richardson B. McKenzie, III, Robison & Belser, Montgomery, Ala., for plaintiffs.

Barry E. Teague, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., Curtis L. Muncy, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

This cause, in which the plaintiffs Everett V. Hutcheson, Jr. and Jane R. Hutcheson, a married couple, seek recovery of income taxes allegedly wrongfully collected, is now before the Court on the defendant United States of America's motion for summary judgment. Upon consideration of the motion and the evidence and briefs submitted in connection therewith, the Court is of the opinion for the following reasons that the motion is due to be granted.

### I. Background

In 1975 and 1976, the Hutchesons filed joint income tax returns in which they claimed a fifty percent maximum income tax rate for all income from E. V. Hutcheson Construction Company, a sole proprietorship owned by Mr. Hutcheson. The United States Internal Revenue Service disallowed the claimed fifty percent tax rate to all but thirty percent of the company's income and, for the resulting tax difference, assessed the Hutchesons $12,743.91 for 1975 and $12,844.01 for 1976. The Hutchesons paid these two assessments and timely filed this action for refund of the assessments.[1]

### II. The Facts

The E. V. Hutcheson Construction Company operated as a general contracting company for the construction and repair of buildings. The company and its customers entered into general contracts which obligated the company to furnish all labor and materials and which were obtained either by negotiation or by submission of competitive bids based upon estimates of the total costs of labor and materials necessary to

---

1. This Court's jurisdiction is properly invoked pursuant to 28 U.S.C. § 1346(a)(1).

perform the contracts, with, of course, an allowance for company profit.

For the years 1975 and 1976, the company's income and expenditures, as reported to the IRS, were as follows:

| Income | 1975 | 1976 |
|---|---|---|
| Gross receipts on Construction Contracts | $ 995,311.00 | $ 1,452,557.00 |
| Less: Direct Construction Costs | | |
| Labor | 124,068.00 | 145,825.00 |
| Materials | 272,229.00 | 370,395.00 |
| Work Sub-Contracted | 378,741.00 | 706,471.00 |
| Equipment Rental | 8,879.00 | 14,994.00 |
| Utilities | 830.00 | 563.00 |
| Other Direct Costs | 6,774.00 | 14,555.00 |

Although this schedule of income and expenditures reveals that a substantial portion of the company's expenditures in both years was devoted to the cost of materials, the company maintained no inventory except for excess materials from completed jobs. Instead, materials were ordered as needed for incorporation into each construction project and were obtained on credit "net 30 days," whereby payment was not due until thirty days after the materials were delivered. Also, the subcontracted work, which included mainly electrical, roofing and painting work, was obtained under a similar plan for delayed payments. Furthermore, the company received payments from customers on a "draw" method, by which payments from customers were required to be made periodically, usually by the tenth of each month, based upon a percentage of the work in place on projects.

By use of this arrangement for receipt of income and for delayed payment for materials and labor, the company was able to incorporate materials into a project and obtain payment from customers before the company's accounts for materials, subcontracted work, and labor employed became due. Also, it is clear that by this arrangement the company was itself primarily liable for the cost of materials, subcontracted work, and labor; materials were purchased, subcontracts made, and labor employed in the company's name, not in the name of customers. When a "loss situation" occurred, whether temporarily during construction where incoming payments on a contract would not cover the company's accounts then due, or at the completion of a project where total expenses exceeded the contracted price, the company paid, from its own capital resources, for the cost of materials, subcontracted work, and labor then due.

Finally, the company owned a building in which its offices were located, it owned and leased some equipment, and it employed a secretary and a number of other regular employees. In 1975, the company's assets totaled $969,077.00, of which $493,167.00 was in cash, and in 1976, its assets totaled $1,119,834.00, of which $614,851.00 was in cash.

## III. The Law

By this action, the Hutchesons renew their claim that for the years 1975 and 1976 all income from the company was subject to a tax rate ceiling of fifty percent. In particular, relying on 26 U.S.C. § 1348,[2] which provides that the maximum tax rate on "earned income" is fifty percent,[3] they contend that the income from the company for these years was earned income which is generally defined to include "professional fees, and other amounts received as compensation for personal services actually rendered." 26 U.S.C. § 911(b). See also 26 U.S.C. § 1348(b)(1).[4] In response and relying on subsection (i) of Treasury Regulation § 1.1348–3(a)(3), the United States contends that only thirty percent of the company's income for these years was entitled to the fifty percent ceiling. This regulation provides that for a business in which both earned income and capital are "material income-producing factors," only thirty per-

---

**2.** All references throughout this order are to the Internal Revenue Code, Title 26, and the accompanying Treasury Regulations as they existed immediately prior to the Tax Reform Act of 1976, Pub.L.No. 94–455, 90 Stat. 1520.

**3.** Section 1348 has several further conditions or exceptions which are not at issue in this case.

**4.** Earned income also includes wages and salaries, 26 U.S.C. § 911(b); however, the Hutchesons are not contending that the income for the company was wages or salaries. See also Treasury Regulation § 1.911–2(b).

cent of the income from the business may be treated as earned income subject to the fifty percent tax rate ceiling.[5]

■ It is clear from the positions of both the Hutchesons and the United States that the sole issue for this Court is whether capital was also a material income-producing factor for the company, it being undisputed that earned income was such a factor. However, for purposes of clarity, it should be emphasized what the issue is not: it is not whether capital was a material income-producing factor *to the exclusion* of earned income; to prevail, the United States does not have to show this. Rather, the issue for the Court is simply whether capital was *also* or an *additional* material income-producing factor, along with earned income.

On a motion for summary judgment, the movant has the burden of establishing that there are no genuine disputes as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. *See, e.g., McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 (11th Cir. 1981) (per curiam); *First National Bank of Chicago v. Pendell*, 651 F.2d 419, 420 (5th Cir. 1981) (per curiam).[6] In the present case, the United States has met this burden. The facts as given above are undisputed; and, for reasons which follow, this Court is of the opinion that as a matter of law capital was a material income-producing factor in the company's business for the two years in question. *See Edward P. Allison Co. v. Commissioner*, 63 F.2d 553, 556 (8th Cir. 1933) (the underlying facts not being in dispute, the question of whether capital is a material income-producing factor is one of law for the Court). *See also Dillin v. United States*, 433 F.2d 1097, 1100–01 (5th Cir. 1970).

In searching for the answer as to whether capital is a material income-producing factor in a business, this Court is given substantial direction by subsection (ii) of Treasury Regulation § 1.1348–3(a)(3) which provides:

Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice.

■ Applying this regulation to the undisputed facts in the instant case, this Court is of the opinion that capital as a material income-producing factor is clearly reflected in the operation of the E. V. Hutcheson Company for the years 1975 and 1976. Substantial use of capital to produce income is reflected, first of all, in the materials used to complete construction projects. For the year 1975, these materials costs were $272,-

---

**5.** Treasury Regulation § 1.1348–3(a)(3)(i) provides, in part:

If an individual is engaged in a trade or business (other than in corporate form) in which both personal services and capital are material income-producing factors, a reasonable allowance as compensation for the personal services actually rendered by the individual shall be considered earned income, but

the total amount which shall be treated as the earned income of the individual from such a trade or business shall in no case exceed 30 percent of his share of the net profits of such trade or business . . . .

**6.** The Eleventh Circuit has recently adopted as its precedent the case law of the former Fifth Circuit. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

229.00 and accounted for 34 percent of the company's total expenses, and consumed 27 percent of the company's gross receipts; and for the year 1976, these costs were $370,395.00 and accounted for 30 percent of the company's total expenses, and consumed 25 percent of the company's gross receipts. Furthermore, customers of the company looked to the company for both services and materials, and both services and materials were purchased from the company in the form of a building or repairs to a building. Accordingly, under these circumstances, materials or capital cannot be viewed as anything other than as a material income-producing factor in the production of the company's income. *See, e.g., Gullion v. Commissioner*, 43 T.C.M. 694 (1982) (capital was a material income-producing in concrete flatwork business); *United States v. Korczynski*, 78–2 U.S.T.C. ¶ 9638, p. 85,096, 85,097 (S.D.Ohio 1978) (capital was a material income-producing factor in electrical contracting business); *Edward P. Allison Co. v. Commissioner, supra* (capital was material income-producing factor in electrical contracting business.)

However, the Hutchesons maintain that the "income" for which capital must be a material income-producing factor is not a company's gross income, but its net income or profit. *See Eisner v. Macomber*, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920), *quoting from Stratton's Independence v. Howbert*, 231 U.S. 399, 415, 34 S.Ct. 136, 140, 58 L.Ed. 285 (1913) (income is "gain derived from capital, from labor, or from both combined.") Specifically, the

Hutchesons argue that because materials were obtained and paid for on a "draw" method, the company was nothing more than a broker of goods from which the company derived no profit. Assuming net income is the income for which capital must be an income-producing factor to trigger the application of Treasury Regulation § 1.1348–3(a)(3), the argument does not help the Hutchesons.[7] It must be remembered that the company did not pass the purchased materials on to customers "at cost"; rather, the charges for a construction project to customers were based on estimates of costs, including materials and, of course, included a margin for profit. To the extent that the costs of materials for a construction project were equal to and lower than these estimates, the company reaped a profit for that project; and to the extent that they exceeded these estimates, the company suffered either a decreased profit or even a loss.[8] Thus, the company's ability to realize net income or profit was directly tied to providing materials, as well as services, to its customers.[9]

Nevertheless, the Hutchesons contend that this substantial use of capital in the production of company income, both gross and net, is not fatal to their claim. Pointing also to subsection (ii) of Treasury Regulation § 1.1348–3(a)(3), they maintain that the Hutcheson company was a "professional" company similar to that of doctors, dentists, lawyers, accountants, and architects, for whom capital, though substantial and essential, is merely "incidental" to the pro-

7. Actually, this assumption is incorrect. Treasury Regulation § 1.1348–3(a)(3)(ii) provides that "[c]apital is a material income-producing factor if a substantial portion of the *gross* income of the business is attributable to the employment of capital in the business . . ." (emphasis added). *See also Edward P. Allison Co. v. Commissioner, supra*, 63 F.2d at 557 ("It is the proportion of gross income produced by capital, not net income, that determines whether capital is an income-producing factor.")

8. For the above reasons, as well as those given in footnote 9, *infra*, the instant case differs from *New Orleans Shipwright Co. v. Commissioner*, 27 F.2d 214 (5th Cir. 1928), a case which at first glance would appear to support the Hutchesons' claim.

9. In fact, the draw payments received by the company being themselves a form of capital, Treasury Regulation § 1.1348–3(a)(3)(ii); *Garrow, MacClain & Garrow, Inc. v. Bass*, 88 F.2d 574, 577 (5th Cir.), *cert. denied*, 302 U.S. 697, 58 S.Ct. 15, 82 L.Ed. 538 (1937), they are another indication that capital was a material income-producing factor for the company. *See, e.g., Treatman v. Commissioner*, 41 T.C.M. 934 (1981) (customer prepayments used to finance taxpayer's purchases to fulfill the mail orders constituted capital as a material income-producing factor in the taxpayer's mail order business.) *See also Thomas E. Basham Co. v. Lucas*, 21 F.2d 550 (W.D.Ky.), *aff'd on other grounds*, 30 F.2d 97 (6th Cir. 1928).

duction of income and thus is not a material income-producing factor.

To support their contention, the Hutchesons argue that for 1975 and 1976 Mr. Hutcheson should be considered a "professional" and that as a professional he was entitled for these years to treat his capital investments as only incidental to the production of income and not as a material income-producing source. To show that Mr. Hutcheson was a professional in 1975 and 1976, the Hutchesons note that he was licensed as a professional contractor by the State of Alabama, §§ 34–8–1 et seq., Code of Alabama 1975; *Cooper v. Johnston,* 283 Ala. 565, 219 So.2d 392 (1969), and that like dentists, doctors, lawyers and other professionals his own knowledge, talents, expertise and ingenuity played the major role in the services he rendered. However, the Hutchesons' argument is without merit because its focus is misplaced.

The Hutchesons correctly observe that subsection (ii) of Treasury Regulation § 1.1348–3(a)(3) provides that capital is not considered a material income-producing factor for professionals such as doctors, dentists, lawyers, architects, and accountants. However, the regulation also provides certain defining and limiting characteristics for these professionals, one of the characteristics being that their principal source of income is fees, commissions, and other compensation for personal services and the other one being that their capital investments are only incidental to their production of income. The criterion under the regulation is therefore not simply that a person be a professional, as the Hutchesons argue; but rather, under this regulation, the Court should look to the above two defining and limiting characteristics of such professionals, the focus of the Court's inquiry remaining at all times on the role of capital in a person's business.

With the Hutcheson company, capital in the form of substantial materials purchased was actually incorporated into the company's finished product and, as a result, played a direct and substantial generative role in the production of income, both gross and net. As already noted, when a customer entered into a construction contract with the company, the customer looked to the company for both services and materials; both services and substantial materials were purchased in the form of a building or repairs to a building; and thus both services and materials were material income-producing factors for the company. On the other hand, with doctors, dentists, lawyers and other similar professionals, the significant role of capital investments, such as a doctor's X-ray equipment or a lawyer's copying machine, though clearly substantial and essential to their practices, is to assist these professionals in rendering their services; clients look to them principally for services, not for materials; their capital investments do not to any significant measure become a part of a finished product; and thus capital investments for them are only incidental to their services. *Compare Gullion v. Commissioner, supra; United States v. Korczynski, supra; Edward P. Allison Co. v. Commissioner, supra;* and *Rousku v. Commissioner,* 56 U.S.T.C. 548 (1971) *with Bruno v. Commissioner,* 71 U.S.T.C. 191 (1978). *See also Jaudon Engineering Company v. Commissioner,* 15 B.T.A. 161 (1929); *Karno-Smith Company v. Commissioner,* 13 B.T.A. 449 (1928).

The Hutchesons also point this Court to several Alabama "use and sales tax" cases, in which they maintain there is language to the effect that for Alabama sales tax purposes general contractors are viewed as having "consumed" materials purchased for construction and repair and that, as a result, the transactions between the general contractor and their customers are not viewed as ones in which materials are resold but as ones in which only "services" are rendered. *See, e.g., Alabama Precast Products, Inc. v. Boswell,* 357 So.2d 985 (Ala. 1978); *State v. Algernon Blair Industrial Contractors, Inc.,* 362 So.2d 248 (Ala.Civ. App.), *cert. denied,* 362 So.2d 253 (Ala.1978); *Home Tile and Equipment Company, Inc. v. State,* 362 So.2d 236 (Ala.Civ.App.), *cert. denied,* 362 So.2d 239 (Ala.1978). Assuming this language correctly characterizes such transactions, it is not dispositive of the Hutchesons' claim. Whether a sales tax is imposed at either the point where the gen-

eral contractor purchases materials or at the point where the materials are passed on to the customers as a part of the contractor's finished product is of no consequence in the instant case. What is telling is the fact that these materials are actually passed on to the customers as a part of the "services" rendered and the fact that the costs of these materials is a principal factor in the generation of income. *See, e.g., Gullion v. Commissioner, supra; United States v. Korczynski, supra; Edward P. Allison Co. v. Commissioner, supra.*

The Hutchesons, pointing again to the above Alabama cases, also contend that there is language in the cases from which one could infer that since a general contractor is considered not to have resold to his customers the materials used in construction, he should also be considered as not to have realized any gain or profit on the materials. Assuming this generalization can be inferred from these cases, it does not help the Hutchesons for the simple reason that it conflicts with the undisputed facts in the instant case. As already observed, these facts reflect that the company's provision of materials was a substantial and essential generative factor in the production of income, both gross and net.

### IV. Conclusion

For the above reasons, this Court is of the opinion that both capital and earned income were material income-producing factors in the E. V. Hutcheson Construction Company for the years 1975 and 1976. The United States is therefore entitled to summary judgment in its favor.

A judgment will be entered in accordance with this opinion.