**Richard M. BLOCK and Lena M. Block, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 81–2518–H.**

United States District Court, W.D. Tennessee, W.D.

March 15, 1983.

Thomas R. Prewitt and Hubert A. McBride, Memphis, Tenn., for plaintiffs.

Robert E. Rice, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER GRANTING DEFENDANT SUMMARY JUDGMENT

HORTON, District Judge.

Richard M. and Lena M. Block, plaintiffs, filed this lawsuit seeking refund of $41,-867.90 in taxes paid plus accrued interest thereon which they assert was erroneously assessed and illegally collected by the Internal Revenue Service for the taxable years ending March 31 of 1974, 1975 and 1976.[1]

---

1. Lena M. Block is a plaintiff in the present action solely for having filed a joint return with her husband, Richard M. Block. The business activities of Richard M. Block are of concern to the Court for purposes of this motion and for that reason Richard M. Block will be referred to as plaintiff or taxpayer.

Defendant, United States of America, moved for summary judgment.

Plaintiff filed a cross-motion for summary judgment in his favor in an amount equal to the relief sought in his complaint for refund of alleged overpayment of income taxes. After a careful analysis of the facts and a review of the applicable law, the Court grants the defendant's motion for summary judgment. The cross-motion of the plaintiff for summary judgment is denied.

Based upon the pleadings and the record, the Court finds the following facts, which are not materially disputed:

1) Taxpayer, Richard M. Block, is a partner in the firm of Block & Unobsky, (firm) doing business as a cotton merchant in Memphis, Tennessee.

2) Starting at periods well in advance of planting, sometimes as long as one year, the firm contracts to purchase cotton from producers. The purchase contracts are called forward contracts because purchases are made before cotton is harvested or sometimes planted.

3) The producers agree to plant the number of acres of cotton specified in the contract.

4) During the planting and growing season the firm may seek to protect its position for the amount of contract purchases made by either hedging transactions on the cotton futures market or by sales to mills.

5) The cotton crops, when they are harvested, are invoiced by the producer to the firm for payment at the stipulated contract price.

6) The price the cotton is sold to the mills covers the anticipated cost of the cotton plus the storage and compression costs, freight costs, and interest costs involved in finally delivering the cotton to the consumer.

7) When cotton is ready for shipment, the firm prepares an invoice listing each bale and its weight which are totaled, multiplied by the price and an invoice and a draft are prepared for that amount.

8) The income tax return for the partnership of Block & Unobsky and the personal tax returns of Richard M. and Lena M. Block for the years 1974, 1975 and 1976 were prepared by Ernest P. Newburn, Certified Public Accountant. Mr. Newburn stated in an affidavit, filed herein, that it was his decision that the income from the partnership should be treated as personal service income of Richard M. Block because capital is not a "material income-producing factor" in the cotton shipping business. His reasons are:

a) Purchases and sales of cotton are made with no reliance upon having the product on hand. There is no reliance upon seeing the actual product;

b) There is no mark-up involved in the cotton price. There is no retail sales price as opposed to a wholesale sales price;

c) The same income could have been obtained by Block & Unobsky had they acted as commission agents for the mills instead of taking title themselves to the cotton;

d) The cotton shipper, such as Block & Unobsky, brings together two ends of the cotton industry, the producer and the consumer;

e) No money changes hands at the time of execution of the contract;

f) Richard Block, prior to the start of the year ending March 31, 1974, had no capital in the partnership; and

g) The use of large amounts of borrowed money in the buying and holding of cotton simply produces no profit beyond that necessary to pay for basic overhead and buying and selling expenses. The use of large amounts of borrowed money has no material relationship to profits. Borrowed funds are advanced by banks only against known sales of cotton where the price is fixed either by sale to the mills or by hedging contracts on the futures market.

9) Plaintiffs in their memorandum filed June 30, 1982, page 3, stated:

The money used to pay the farmer for the cotton delivered came from borrowed

funds supplied by the bank. The borrowed funds were used for the purpose of paying the farmer upon delivery of his cotton and for the purpose of carrying the partnership until the partnership received payment for the cotton from the mills.

| Taxable Year | Gross Income |
|---|---|
| 1974 | $25,731,801.91 |
| 1975 | 23,085,540.31 |
| 1976 | 18,015,954.12 |

The defendant has calculated and the Court finds that costs of goods sold represented in excess of 90% of Block & Unobsky's gross income. The tax returns of Block & Unobsky show the following gross incomes, costs of goods sold, and ratio of income to costs of goods sold.

| Cost of Goods Sold | Ratio of Income To Costs of Goods |
|---|---|
| $24,199,107.24 | 94% |
| 21,296,274.41 | 92% |
| 17,307,971.50 | 96% |

The Court therefore finds that a substantial portion of the gross income of Block & Unobsky is attributable to the employment of capital.

10) Richard M. and Lena M. Block filed joint tax returns for the years 1974, 1975 and 1976 and paid taxes as follows:

| Taxable Year | Taxes Paid |
|---|---|
| 1974 | $ 85,280.27 |
| 1975 | 158,189.04 |
| 1976 | 62,589.20 |

11) On or about August 11, 1977, the Commissioner of Internal Revenue, after having examined taxpayer's returns, determined that the taxpayer owed additional tax and assessed those taxes for the appropriate years in the following sums:

| Taxable Year | Additional Taxes |
|---|---|
| 1974 | $ 8,140.56 |
| 1975 | 32,499.31 |
| 1976 | 2,321.06 |

The total additional assessment was $42,960.93.

12) The reason for the additional tax assessments was a decision by the Internal Revenue Service that the taxpayer, Richard M. Block, had erroneously determined that 100% of his share of the profits from Block & Unobsky was earned income rather than 30% as determined by the IRS. The parties agree the sums earned by the taxpayer, Block, constitute earned income for the years 1974, 1975, 1976.

13) In accordance with the IRS determination, the taxpayer paid the additional sum of $6,957.56 for 1974, $32,499.30 for 1975 and $2,411.06 for 1976 and thereafter filed this lawsuit seeking a refund of $41,867.90, with interest thereon as provided by law and costs.

The issue before the Court is whether a substantial portion of the gross income of Block & Unobsky is attributable to capital. The Court has to determine if capital was a material income-producing factor in the business of Block & Unobsky. The Court answers the question affirmatively and rules judgment should be entered for the United States.

It is plaintiff's contention that capital was merely incidental to the partnership business and that almost 100% of the profit earned by the business resulted from the personal service decisions of the two partners in the firm as to when and how to buy cotton from the farmers and when and how to sell cotton to the mills or hedge contracts in the futures market.

It is defendant's position that capital investments in cotton purchased by the firm from farmers was a material income-producing factor in the business.

If capital was not a material income-producing factor, but was merely incidental to the partnership income, plaintiff is entitled to the relief sought. However, if capital was a material income-producing factor, then defendant must prevail on its motion for summary judgment. At the outset, it should be noted that capital does not have to be a material income-producing factor to the exclusion of earned income. The defendant can prevail on its tax assessment if

capital was also an additional material income-producing factor, along with earned income. *Hutcherson v. United States,* 82–1 U.S.Tax Cas. 83,763 at 83,765 (CCH) ¶ 9304 (M.D.Ala.1982).

Section 1348, Internal Revenue Code of 1954 [2] provided, during the years in dispute, that the maximum tax rate on earned income is fifty (50%) percent. Earned income is defined for purposes of Section 1348 as earned income within the meaning of Section 401(c)(2)(C) or Section 911(b). Section 911(b) is the relevant provision in this case. Earned income is generally defined to include "professional fees, and other amounts received as compensation for personal services actually rendered." Section 911(b), Internal Revenue Code of 1954. Treasury Regulation Section 1.1348.3(a)(3)(i) provides in part:

> If an individual is engaged in a trade or business (other than in corporated form) in which both personal services and capital are material income-producing factors, a reasonable allowance as compensation for the personal services actually rendered by the individual shall be considered earned income, but the total amount which shall be treated as the earned income of the individual from such a trade or business shall in no case exceed 30 percent of his share of the net profits of such trade or business.

Section 911(b) also provides for the 30% limitation when personal service and capital are material income-producing factors of the business.

A movant on motion for summary judgment has the burden of establishing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hutcherson, supra.* Plaintiff has not met this burden; however, the United States of America has met this burden. The underlying facts are not in dispute and therefore the question of whether capital is a material income-producing factor is one of law for the Court. *Hutcherson* at 83,765.

Treasury Regulation § 1.348–3(a)(3)(ii) aids the Court in determining whether capital is a material income-producing factor in a business:

> Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice.

This regulation and applicable decisional law mandate the Court to conclude that capital was a material income-producing factor in the Block & Unobsky cotton business. If a "substantial portion of the gross income of the business is attributable to the employment of capital in the business," then capital is a material income-producing factor. *Moore v. Commissioner,* 71 Tax Ct. Rep. 533 (CCH) ¶ 35,823 (1979); *See Rousku v. Commissioner,* 56 Tax Ct.Rep. 2906 (CCH) ¶ 30,839 (1971).

In this case, plaintiff's firm purchased cotton from producers and resold the cotton to mills. The firm obtained substantial

---

2. For taxable years beginning after 1978, Section 1348 was amended to delete the 30% limitation on earned income derived from a trade or business in which capital was a material income-producing factor. The Economic Recovery Act of 1981 repealed the section altogether for taxable years beginning after December 31, 1981.

funds from banks to purchase the cotton, to compress and warehouse the cotton, and to ship it to its customers. For the relevant years, plaintiff's tax returns reflect that cost of goods represented in excess of 90% of the business' gross income. No definite percentage ratio of gross income derived from capital sources to total income can be fixed at an exact point as a key to deciding when capital is a material income-producing factor. *Rousku* at 2908. However, the Court is guided by percentages of capital to gross income considered by other courts to determine if capital is a material income-producing factor in this case. Forty (40%) percent of the taxpayer's gross income was derived from the sale of materials and parts in the automobile repair business in *Rousku*. The court held that percentage constituted a substantial portion of taxpayer's gross income. *U.S. v. Korczynski*, 78–2 U.S. Tax Cases 85,096 (CCH) ¶ 9638 (S.D.Ohio 1978), held that where a taxpayer is engaged in a business that involves both personal services and providing tangible materials, the purchase and sale of such materials in an amount approximating 50% of gross receipts, indicates the business employs capital as a material income-producing factor. *Id.* at 85,097.

Taxpayer in this case asserts that almost 100% of the gross income was derived from personal service decisions of the partners in an attempt to avoid the 30% limitation found in the Internal Revenue Code and the regulations. The Court must reject taxpayer's assertion. The cases cited to this Court and cases researched by the Court which held capital was only incidental to the gross income of the business are clearly distinguishable from the instant case. The businesses conducted by those taxpayers in the cases cited by plaintiff were essentially personal service businesses unlike this taxpayer's business. *See Bruno v. Commissioner,* 71 Tax Ct.Rep. 3647 (CCH) ¶ 35,529 (1978), (taxpayer's business was writing bail bonds); *Van Dyke v. U.S.,* 82–1 U.S.Tax Cases 33,188 (CCH) ¶ 9156 (U.S.Ct.Cl.1982), (taxpayer operated a taxidermy supply business where extensive hand labor and the expertise of taxpayer was held to be essential to the income of the business); *See also Lewis v. Commissioner,* 42 Tax Ct.Rep. 2878 (CCH) ¶ 26,921 (1964).

Taxpayer's firm purchased cotton to sell. The income received by the firm was derived primarily from the sale of cotton. The nature of the business is more akin to that of a merchant rather than that of a lawyer, doctor, accountant, bail bondsman or a taxidermist. The fact that the firm's customers may have relied to some degree on the partner's expertise and shrewd business judgment does not lead to the conclusion that capital was not a material income-producing factor of the business. The court in *Moore* rejected this contention by the taxpayer in his attempt to show that his grocery store was more profitable than similar stores as follows:

> While this analysis may have considerable appeal as an academic exercise, it has no foundation in the legal definition of whether capital is a material income-producing factor. The pertinent issue under section 1348 is not how efficiently petitioners' ran their business, but whether a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment.

*Moore* at 540.

It is clear to the Court that Block & Unobsky could not have produced the gross income it did in 1974, 1975 and 1976, without substantial capital. Capital was a vital part of carrying on the business of this cotton merchant firm. The income of this business depended upon the employment of substantial capital. Capital was a material income-producing factor in the business. Consequently, the 30% tax limitation on earned income applies in this case. While the Court read with intriguing interest the reasoning of Mr. Newburn, the C.P.A., that the use of large amounts of borrowed money by Block & Unobsky had no material relationship to partnership profits, the Court is unable to accept that reasoning as valid in this case.

This case is an appropriate one for the granting of a motion for summary judgment. *C.F.W. Construction Co. v. Travelers Ins. Co.*, 363 F.2d 557 (6th Cir.1966).

For the reasons stated, the Court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment. The complaint is hereby dismissed and is SO ORDERED this 15th day of March, 1983.