767 F.2d 919
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES C. AND CARLYDIA BERRY, PLAINTIFF-APPELLANT,
v.
UNITED STATES OF AMERICA, DEFENDANT-APPELLEE.
 NO. 84-5483
 United States Court of Appeals, Sixth Circuit.
 6/25/85
 
 E.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: JONES and WELLFORD, Circuit Judges; BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an action for refund of income taxes paid by appellants James and Carlydia Berry[1] for 1974, 1975, and 1976. The sole issue on appeal is the validity of the magistrate's[2] determination that capital was a material income-producing factor in the appellant's automobile parking business within the meaning of 26 U.S.C. Secs. 911(b) and 1348. Because the factual findings of the trial court are not clearly erroneous, we AFFIRM.
 
 
 2
 During the years in question, the taxpayer operated parking lots at airports and hospitals throughout the country. The taxpayer obtained the exclusive right to operate parking lots at the facilities by entering into lease agreements with the municipal officials who supervised the airports and hospitals. The taxpayer paid a specified percentage of his actual gross receipts from the parking lot operations as rent. In each lease agreement, however, the taxpayer was required to pay the municipalities a minimum guaranteed rental. The guaranteed rental often was payable over the term of the lease, but in some cases the taxpayer was required to pay the guaranteed rental in advance. The minimum guaranteed rentals ranged from thirty percent to ninety percent of the receipts that the taxpayer projected he would receive from a particular lot. The actual rents paid by the taxpayer, however, often were higher than the minimum guaranteed rentals, because the taxpayer's actual receipts were higher than his projections. During the years in question the taxpayer paid a total of $3,148,969 in guaranteed rentals.
 
 
 3
 In addition to paying rent to the municipalities that owned the airports and hospitals, the taxpayer provided and maintained improvements on the lots, such as fencing, grading, lining, wiring, lights, gates, ticket machines and toll booths. During the three years in question, the taxpayer spent at least $1,133,833 on capital improvements for his parking lot operations. The taxpayer concedes that the improvements enhanced the efficiency, and, by inference the profitability, of his parking lot operations.
 
 
 4
 During 1974, 1975 and 1976, the taxpayer reported all of his net profits as 'personal service income' subject to taxation at a fifty percent maximum marginal rate.[3] After auditing the taxpayer's returns for the years in question, the Internal Revenue Service determined that none of the taxpayer's net profits were 'personal service income' and concluded that none of taxpayer's net profits were entitled to the benefit of the maximum marginal rate of fifty percent.[4] The Service assessed a total of $178,612.05 in deficiencies. The taxpayer paid the alleged deficiencies and filed suit for a refund in the district court.
 
 
 5
 It is undisputed that Mr. Berry performed many personal services when managing his parking lots including: all record keeping functions necessary to the operation of the lots, all bookkeeping and accounting functions, tax reporting and tax paying, providing maintenance and custodial services, hiring and training personnel, designing traffic flow regulation, and providing security for patrons' cars.
 
 
 6
 The magistrate evaluated the facts and circumstances of the case and determined that capital was a material income-producing factor. Therefore, he concluded that all of Berry's income could not receive the benefit of the maximum marginal rate of fifty percent. The mag strate found, however, that Mr. Berry was extremely successful in his parking lot operations and that he was sought out by many airports and hospitals because of his excellent management skills. The magistrate states: '[h]is business acumen is not in dispute, nor is there any serious dispute that he actually rendered personal services to the municipalities.' Appendix at 252. Because the magistrate found that both the taxpayer's personal services and capital were material income-producing factors, the magistrate determined that thirty percent of the taxpayer's income, the maximum amount allowable, should receive the benefit of the fifty percent maximum marginal rate. Thus, a partial refund of $47,225.15 was allowed, from which the government does not appeal. The taxpayer, however, contends that the magistrate erred when he determined that capital was a material income-producing factor in his business and contends that all of this income should receive the benefit of the fifty percent maximum marginal rate.
 
 
 7
 For purposes of section 1348 (which created the maximum fifty percent marginal rate on 'personal service' income), the definition of earned income contained in section 911(b) was adopted. Section 911(b) provides in pertinent part:
 
 
 8
 For purposes of this section, the term 'earned income' means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered. . . . In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.
 
 
 9
 Further clarification of this definition is set forth in Treas. Reg. Sec. 1.1348-3(a)(ii), 26 C.F.R. 1.1348-3(a)(ii) (1984):
 
 
 10
 Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice.[5]
 
 
 11
 It is the taxpayer's contention, more specifically, that capital was merely incidental to his parking lot business and that one hundred percent of the profits earned by the business should be treated as resulting from the personal services rendered by Mr. Berry. The magistrate found, however, that capital investments in the form of the guaranteed rentals that Berry paid to the municipalities and the parking lot improvements supplied and maintained by Berry were material income-producing factors in the business.
 
 
 12
 The question of whether capital is a material income-producing factor is 'a factual question which must be determined from all the facts and circumstances of the case.' Bruno v. Commissioner, 71 T.C. 191, 199 (1978) (citing Rousko v. Commissioner, 56 T.C. 548, 550 (1971)); Treas.Reg. Sec. 1.1348-3(a)(3)(ii). This court must not disturb the factual findings of the district court unless they are clearly erroneous. See Anderson v. City of Bessemer City, ---- U.S. ----, 105 S. Ct. 1504 (1985) (the clearly erroneous standard applies 'even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.')
 
 
 13
 The taxpayer claims that he is a 'professional' and that his income, like that of a doctor, lawyer, accountant, artisan or stockbroker, is purely a product of his personal skills. The magistrate found, however, that capital was more than incidental in the taxpayer's business. At the outset, it should be noted that capital does not have to be the material income-producing factor to the exclusion of personal services. The magistrate's decision is not clearly erroneous if capital was a material income-producing factor along with personal services. See Block v. United States, 569 F. Supp. 981, 983-84 (W.D. Tenn. 1983), aff'd, 732 F.2d 153 (6th Cir. 1984).
 
 
 14
 It is undisputed that during the years in question, Berry invested over three million dollars in leaseholds or in contracts analogous to leaseholds. The tax court has long recognized that 'a valuable leasehold constitutes capital' Fairfax Mutual Wood Products Co. v. Commissioner, 5 T.C. 1279, 1282 (1945); see also Moore v. Commissioner, 71 T.C. 533, 539 (1979) ('Leased property is also considered capital. . . .'). In addition, during the years at issue, Berry also invested at least one million dollars in capital improvements for his parking lot operations. See Friedlander v. United States, 718 F.2d 294, 296 (9th Cir. 1983) ('Capital is a material income-producing factor 'if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment.") We also find that the magistrate correctly rejected the taxpayer's contention that these capital improvements were all 'start up costs.' In the instant case, Berry made many capital expenditures other than 'start up costs,' however that term may be defined. Because Berry invested substantial amounts of capital in leaseholds and improvements, and because without such expenditures he could not have operated his business and generated his income, see Gaudern v. Commissioner, 77 T.C. 1305, 1311 (1981), the magistrate correctly concluded that capital was a material income-producing factor within the meaning of section 911(b). As stated, under the statute when personal services and capital are material income-producing factors, only that part of the income attributable to personal services, not in excess of thirty percent of the net profits of the business, can receive the benefit of the fifty percent maximum marginal tax rate. 26 U.S.C. Sec. 911(b); see 77 T.C. at 1310. Taxpayer received the benefit of that provision.
 
 
 15
 The decision of the magistrate is, therefore, AFFIRMED.
 
 
 
 [1]
 Carlydia Berry is an appellant in the present action solely by virtue of her having filed a joint return with her husband. The business activities of James Berry are of concern to the court and for that reason James Berry will be referred to as the appellant and the taxpayer
 
 
 [2]
 The case was tried without a jury before Judge Frank W. Wilson on September 23-24, 1981. Judge Wison, unfortunately, died prior to entering findings of fact and conclusions of law in the case. Subsequent to Judge Wilson's death, the parties consented to United States Magistrate Roger W. deciding the case based on the trial transcript and the deposition of James Berry. An order to this effect was entered on January 10, 1983
 
 
 [3]
 The taxing scheme will be dealt with in greater detail, infra
 
 
 [4]
 It was the position of the Service, and of the government in district court, that none of Mr. Berry's income was personal service income because, they contended, he rendered his services to the municipalities while the fees were paid by parking lot customers. The district court determined that, for present purposes, it would be immaterial that Berry's services were rendered to the municipalities and the fees were paid by parking lot customers; the government, on appeal, does not challenge this determination
 
 
 [5]
 The Regulations (26 C.F.R. 1.1348-3 (1984)) give several examples of the application of the statute that are instructive:
 Example (1) A owns and operates an unincorporated laundering and dry cleaning business. A, assisted by his employees, devotes his entire time and attention to this business. Substantial capital is invested in the plant and equipment utilized in the laundering and cleaning of clothing for A's customers. Although personal services performed by A and his employees are a material income-producing factor in A's business, the capital investment in plant and equipment is not merely incidental to the performance of such services but is, as such, material to the production of business income. Therefore, A's laundering and dry cleaning business is one in which both personal services and capital are material income-producing factors. . . .
 * * *
 Example (3) For the taxable year ending on December 31, 1973, A, a radiologist, reports fees of $100x for professional services rendered to his own patients during 1973. Since 1970, A has maintained his own office in a small building that he purchased for $60x. In addition, A owns X-ray equipment with an original cost of $300x which he uses in his professional practice. The entire $100x of professional fees earned by A during 1973 is treated as earned income, notwithstanding that A has a substantial capital investment in professional equipment and the office from which he conducts his medical practice, because such capital investment is only incidental to the rendition of personal services in A's professional practice.