**John M. FRIEDLANDER and Corrine Friedlander, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 82–3580.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1983.

Decided Oct. 11, 1983.

Jeffrey A. Peterson, Bogle & Gates, Seattle, Wash., for plaintiffs-appellants.

Thomas M. Preston, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KILKENNY and FLETCHER, Circuit Judges, and TAYLOR, District Judge.*

_____

* The Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation.

KILKENNY, Circuit Judge:

Appellants John and Corrine Friedlander appeal from the district court's grant of summary judgment for the Government and dismissal of their claim for refund of income taxes. We affirm.

## FACTS

In 1975, 1976, and 1977, John Friedlander was a partner in P & J Wholesale Jewelry Co. (P & J). P & J was in the business of selling jewelry, but it did not maintain a regular inventory at its place of business. Instead, it negotiated a firm purchase order from a customer, purchased the jewelry in its own name from suppliers based on the customer's order, on occasion personalized the jewelry, and then delivered it to the customer. The business was operated out of a small office in a building otherwise occupied by Friedlander and Sons Jewelry, a business substantially owned by John Friedlander. Consequently, it paid no rent or other building expenditures.

The price that a customer paid for the jewelry was negotiated at the time an order was placed. The price was based on the expected wholesale cost to P & J plus a 20 percent mark-up. Customers, however, were quoted a single price and were not informed of the supplier's price or P & J's mark-up. Because the price was fixed by contract, if the wholesale price to P & J fluctuated upward between the time an order was placed and the time it was delivered, P & J was required to absorb the additional expense.

In 1979, the Internal Revenue Service (IRS) audited P & J's tax returns for the years 1975, 1976, and 1977. It concluded that not all of the income of the business was "earned income" for purposes of the 50 percent maximum tax rate then imposed on earned income pursuant to 26 U.S.C. § 1348(a)(1),[1] and that capital was a material income-producing factor in the business and, therefore, only 30 percent of P & J's income was subject to the earned income maximum tax rate. Appellants paid the deficiency and instituted a suit for refund.

On cross motions for summary judgment, the district court held that P & J was in the business of buying and selling jewelry, not providing personal services. It also held that P & J utilized capital in the form of credit extended by suppliers to purchase jewelry eventually sold to customers. This capital was determined to be a material income-producing factor in the business. The district court granted summary judgment for the Government and denied appellants' claim for refund.

## ISSUE

The sole issue on appeal is whether capital was a material income-producing factor in the P & J business within the meaning of 26 U.S.C. §§ 911(b) and 1348.

## STANDARD OF REVIEW

In reviewing the grant or denial of summary judgment, this court "need decide only whether any genuine issue of material fact remains for trial and whether the substantive law was correctly applied." *Gaines v. Haughton,* 645 F.2d 761, 769 (CA9), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1981) (quoting *Inland Cities Express, Inc. v. Diamond Nat'l Corp.,* 524 F.2d 753, 754 (CA9 1975).

## DISCUSSION

### I. SUBSTANTIVE PROVISIONS.

For the taxable years in question, section 1348 limited the maximum tax rate on earned income to 50 percent. For purposes

---

1. Section 1348(a)(1), *repealed by* Pub.L. No. 97–34, Title I, § 101(c)(1), 95 Stat. 183 (1981), provides:

　(a) *General Rule.*
　If for any taxable year an individual has personal service taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section

1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of
　(1) the tax imposed by section 1 on the highest amount of taxable income on which the rate of tax does not exceed 50 percent,
. . . .
I.R.C. § 1348(a)(1) (1977).

of section 1348, the definition of earned income contained in section 911(b) was adopted. Section 911(b) provides in part:

> For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered.... In the case of a taxpayer engaged in a trade or business in which personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

Further clarification of this definition was set forth in Treas.Reg. § 1.1348–3(a)(ii) (1979):

> Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where the gross income of the business consists principally of fees, commissions, or other compensation for personal services performed as an individual....

While we have yet to address the issue, other courts have applied the standard that "[c]apital is a material income-producing factor 'if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment,' and not if the 'gross income of the enterprise consists principally of fees, commissions, or other compensation for personal services.'" *Moore v. Comm'r*, 71 T.C. 533, 538 (1979) (quoting *Rousku v. Comm'r*, 56 T.C. 548, 551 (1971)). *See also Bruno v. Comm'r*, 71 T.C. 191 (1978) (applying Treas. Reg. § 1.1348–3(a)(ii)). The Tax Court has

generally made a distinction on the basis of whether the essential nature of the business was selling goods or providing services. If the business was essentially selling goods, capital has been deemed to be a material income-producing factor. *See, e.g., Gaudern v. Comm'r*, 77 T.C. 1305 (1981) (bowling supplies); *Moore*, 71 T.C. 533 (groceries). However, if the business was essentially providing services, and perhaps selling a few goods incidental to providing the services, capital has not been deemed a material income-producing factor in the business. *See United States v. Van Dyke*, 696 F.2d 957 (Fed.Cir.1982).

## II. MERITS.

Appellants contend that personal services generated *all* of P & J's income. They claim that the essential nature of the business was providing personal services by acting as an intermediary between customers desiring to purchase large quantities of jewelry and suppliers. Despite these contentions, the record reveals that the gross income of P & J was derived solely from the sale of jewelry, not from fees, commissions, or other compensation paid for personal services.

In *Moore*, 71 T.C. 533, the court was confronted with a similar situation. The owner of a retail grocery store argued that capital was not a material income-producing factor in his business. Evidence was introduced showing that the personal efforts of the owner and others had enhanced the store's profitability. In holding that both capital and personal services were income-producing factors in the business, the court emphasized that

> [p]etitioners' services in retailing are also a material income-producing factor but are inseparable from the inventory purchased by its customers. The gross income of their business came entirely from the price paid for its groceries, not from any fees, commissions, or other compensation paid directly for personal services. We find that capital employed in inventory, equipment, and building is a material income-producing factor in such business.

71 T.C. at 539. The recognition that a business often involves both capital and personal services which together contribute to the income of the business is particularly applicable to this case.

Friedlander's personal services, while certainly a contributing factor to the profitability of the business, cannot be separated from the inventory. The fact that P & J entered into binding contracts with its customers prior to purchasing the jewelry from suppliers does not detract from the essential nature of the business, which was buying jewelry with the intention of reselling it at a profit. In this respect, P & J was conducting its business much the same as other merchants.

Moreover, we reject appellants' contention that we should distinguish this case from *Moore* because P & J did not maintain a regular inventory at its place of business. In fact, P & J did maintain an inventory, albeit for short periods of time. It ordered jewelry from suppliers who delivered directly to the business. The nature of the relationship with P & J and the suppliers was strictly that of buyer and seller. After P & J received the jewelry from its suppliers all risks associated with ownership, such as loss, damage and customer default were assumed by it. It is not clear from the record how long the jewelry remained at P & J before delivery to customers. However, the issue is not the permanency with which a taxpayer uses the particular capital, but whether the capital is a material income-producing factor in the business. Here, it is undisputed that P & J had gross sales during 1975, 1976, and 1977, of $1,802,951. Discounting this amount by 20 percent for the mark-up claimed by appellants, the cost of the jewelry to P & J over this period of time was approximately $1,442,361. We find that this constituted a substantial investment in inventory.

Appellants claim that regardless of the cost of the jewelry, P & J was not required to invest any capital to generate the income. P & J purchased the jewelry according to favorable credit terms extended by its suppliers. These terms generally allowed P & J 30 days from delivery to pay. Accordingly, P & J was normally able to collect payment from its customer and remit the invoice amount to the supplier within the allotted time. However, the district court correctly held that the extension of credit to P & J was a form of capital. Absent these favorable credit terms, P & J would have been required to seek alternative financing arrangements, such as inventory financing, customer prepayment, or payment from accumulated savings. In effect, P & J borrowed money to acquire the jewelry from its suppliers, but the legal effect is no different than if it had financed the inventory by other means. *See Gaudern,* 77 T.C. at 1312.

In *Gaudern,* a bowling equipment supplier argued that because he turned over his inventory so rapidly that he was not required to furnish any capital, the income he did make was attributable to services, not capital. In rejecting this contention, the court stated that

[i]n business, it is common to borrow money to acquire inventory, to acquire buildings, or to acquire necessary equipment; but the source of the capital has not been considered relevant for purposes of section 1348. The purpose of the test under section 1348 is to determine whether the income is attributable to the personal services of the taxpayer or whether such income was earned by capital, and in the light of that objective, the source of the capital has no significance. In effect, the petitioner borrowed the money to acquire the inventory from his suppliers, but the legal effect is no different than if he had financed his inventory by a line of credit from a financial institution. The inventory of [the company] surely contributed materially to the income of the business, regardless of how it was acquired.

*Id.* at 1312. The court concluded that "neither the regulations nor the cases under section 1348 have made the result turn on whether the capital was furnished by the taxpayer; the only question is whether cap-

ital was material in producing the income of the business." *Id.*

## CONCLUSION

We are convinced that capital, in the form of credit terms extended by suppliers, was a material income-producing factor in P & J's business. Accordingly, we affirm the decision of the district court.