Wiley N. HICKS, Jr. and Roberta Hicks, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–1339.

United States Court of Appeals, Fifth Circuit.

April 23, 1986.

Whittenburg, Whittenburg & Schachter, Cary Schachter, Michael L. Monhollon, Amarillo, Tex., for plaintiffs-appellants.

Glenn L. Archer, Michael L. Paup, Chief, Appellate Sec., Richard Farber, Kenneth L. Greene, David Pincus, Asst. Attys. Gen., Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellee.

Before RANDALL, and GARWOOD, Circuit Judges, and SCHWARTZ,* District Judge.

RANDALL, Circuit Judge:

Following a jury verdict in favor of the plaintiffs, the district court granted the government's motion for judgment notwithstanding the verdict, holding that capital was an income-producing factor in the plaintiffs' business in 1975 and 1976. The plaintiffs appeal. We affirm.

I.

Wiley and Roberta Hicks (the "Hickses") ran a general contracting business in 1975 and 1976 in Amarillo, Texas. The Hickses obtained most of their business by competitive bidding, and the remainder by private negotiation. The evidence adduced at trial demonstrated that Wiley Hicks' solid reputation for dependability was instrumental in his obtaining business. Both Wiley and Roberta worked extremely long hours, and the evidence they presented at trial confirms their position that "[e]xtensive management skills and people skills were required to do [the] job successfully." Hickses' brief at 6.

Although the Hickses hired subcontractors to do much of the construction work, they also did some of the work themselves. They or their employees did concrete and trim work; they installed doors and glass inserts; and they did final clean-up work. Furthermore, while their business was not heavily capitalized, the Hickses owned a building, a flat bed truck, six pick-up

* District Judge of the Eastern District of Louisiana, sitting by designation.

trucks, two cars, various office equipment (such as typewriters, adding machines, and copying machines), a tractor, and trailers. The evidence presented at trial can be summarized as follows:

| | 1975 | 1976 |
|---|---|---|
| Adjusted basis of the building: | $42,084.23 | $45,725.16 |
| Total adjusted basis of their transportation and other equipment: | $125,411.24 | $120,660.32 |
| Total adjusted basis for the Hickses' capital: | $167,495.47 | $166,385.48 |
| Gross receipts: | $3,504,545.41 | $3,717,631.10 |
| Gross income: | $298,708.01 | $402,407.48 |
| Money paid | | |
| to subcontractors: | $2,644,612.35 | $2,480,109.52 |
| for labor: | $352,977.99 | $338,975.12 |
| for supplies and materials: | $150,876.42 | $449,625.20 |

On their federal income tax returns for 1975 and 1976, the Hickses computed their liability without taking into account section 1348 of the Internal Revenue Code of 1954 (the "Code"), which limited the tax rate for "earned income" to fifty percent at a time when the highest marginal tax rate was seventy percent.[1] The Code defines "earned income" as wages, salaries, professional fees, or other amounts received as compensation for personal services.[2] For businesses where both capital and personal services were material income-producing factors, section 1348 limited the amount of income eligible for the fifty percent maximum tax rate to thirty percent of the business' net profits. The Hickses subsequently filed amended returns, seeking refunds

under section 1348 of $1,919.04 for 1975, and $9,237.59 for 1976. After the claims were denied, the Hickses filed suit.

A jury trial was held to determine solely whether capital was a material income-producing factor in the Hickses' business. An affirmative answer would mean that the Hickses were not entitled to the refund for which they brought suit. Neither party moved for summary judgment, but the government did move for a directed verdict prior to the submission of the case to the jury. The district court denied the motion at that time, but the government renewed its motion following the adverse jury verdict, at which time the district court granted a j.n.o.v. The Hickses therefore appeal.

II.

In granting the government's motion for j.n.o.v., the district court determined that under the facts of the case, reasonable persons could not conclude that capital was not a material income-producing factor for the Hickses. We apply the familiar *Boeing* standard, which provides as follows:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just the evidence which supports the non-mover's case—but in the

---

1. Sec. 1348. Fifty-percent Maximum Rate on Earned Income.

(a) General Rule.—If for any taxable year an individual has earned taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of—

(1) the tax imposed by section 1 on the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent,

(2) 50 percent of the amount by which his earned taxable income exceeds the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent, and

(3) the excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his earned taxable income.

26 U.S.C. § 1348(a).

For the taxable years beginning after 1981, section 1348 was repealed by section 101(c)(1)

of the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 172. That Act provides for a maximum tax rate of fifty percent on all income for the years beginning after 1981.

2. Section 1348 provided that the definition of "earned income" would be the same as that "within the meaning of Section 401(c)(2)(C) or Section 911(b)...." 26 U.S.C. § 1348(b)(1). Section 911(b) (now section 911(d)) provides as follows:

The term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered.

26 U.S.C. § 911(d)(2)(A).

light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

The Hickses point out that whether capital is indeed a material income-producing factor depends upon the particular facts of each case. *Bruno v. Comm'r*, 71 T.C. 191 (1978). The factual nature of the inquiry makes the issue especially suited for a jury's determination, and, the Hickses conclude, the jury in this case had an adequate basis for concluding that the Hickses' 1975 and 1976 income qualified as earned income for purposes of section 1348.

### III.

The Hickses emphasize that Wiley Hicks' "reputation was ... instrumental in [his] obtaining bid projects." Central to his success "were his personality, his management skills, his architectural skills ..., and his ability to estimate accurately the cost of a job." The Hickses also point out, and the figures in Part I, *supra*, reflect, that the Hickses themselves were "thinly capitalized." While the evidence adduced at trial supports these assertions, the fact that the Hickses were thin on capital, or the fact that the Wiley Hicks' reputation and hard work were critical to his company's success, are not dispositive of the question of whether capital was *also* a material income-producing factor. "The fact that the [taxpayers'] customers may have relied to some degree on the [taxpayers'] expertise and shrewd business judgment does not lead to the conclusion that capital was not a material income-producing factor of the business." *Block v. United States*, 569 F.Supp. 981, 985 (W.D.Tenn. 1983). Thus, even conceding the importance of Hicks' acumen to the generation of profits, capital could nonetheless have

also represented a material income-producing factor.

■ Regulations promulgated by the Treasury Department guide the determination of whether, in fact, capital is material to the production of the taxpayer's income:

Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant, will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice.

26 C.F.R. § 1.1348–3(a)(3)(ii) [hereinafter "Regulations"]. Under these guidelines, as well as the cases interpreting section 1348, the evidence clearly demonstrates that capital was a material factor in producing the Hickses' income, and the judgment n.o.v. was therefore correct.

The Hickses entered into contracts which obligated them to build buildings. Although they hired subcontractors to do much of the work, the typical contract provided that the Hickses were to provide the necessary equipment, tools, labor, and materials. Further, they obtained these contracts not on a cost-plus basis, but on a fixed price. They would estimate their own costs, including materials and labor, and then add to that figure a certain per-

centage representing their anticipated profit. Thus, if the Hickses' estimates of cost proved to be too high, they stood to profit even more than they had expected; but when their estimates were too low, they risked a diminution in profits, or even stood to suffer a loss.

■ Although it is difficult to state categorically that some professions, by definition, utilize capital to generate profits while others do not,[3] the Regulations do provide illustrations in addition to guidance. Generally, the relevant distinction is whether the "essential nature" of the taxpayer's business is selling goods or providing services. *See, e.g., Friedlander v. United States,* 718 F.2d 294, 296 (9th Cir.1983). "If the business was essentially selling goods, capital has been deemed to be a material income-producing factor." *Friedlander,* 718 F.2d at 296. In *United States v. Van Dyke,* 696 F.2d 957 (Fed.Cir.1982), the court, in ruling that capital was not a material income-producing factor for a taxidermist, contrasted the situation it confronted with that which we are currently facing. The *Van Dyke* court noted that the taxidermist's situation was "clearly not a situation where the gross income of the business is attributable normally to the mere purchase of materials which are then resold, or to the installation of unaltered materials." 696 F.2d at 961. The court then pointed out that in order for capital to be deemed a material income-producing factor, "it must be shown that the investment in capital assets is substantial, *or that the use of the capital assets in a particular business is such that it is directly responsible for a substantial portion of the gross income of the business.*" 696 F.2d at 961–62 (emphasis added).

The figures recited *supra* in Part I illustrate,[4] and the nature of their business confirms, that the Hickses' income derived in part from capital. The Hickses respond that they are thinly capitalized, and that although their construction projects utilize capital, the capital is that of the subcontractors. The Hickses paint themselves merely as efficient managers, as middlemen between the customers and the builder-subcontractors. However, what these assertions demonstrate is that both capital *and* other factors played important roles in generating their income in 1975 and 1976. *Cf. Friedlander,* 718 F.2d at 297 (observing that the business involved "both capital and personal services which together contribute to the [business'] income"). On this record, it simply cannot be denied that the furnishing of capital—the components of a building—played a material role in the Hickses' generation of income.

As the Tax Court has observed, "neither the regulations nor the cases under section 1348 have made the result turn on whether the capital was furnished by the taxpayer; the only question is whether capital was material in producing the income of the business." *Gaudern v. Comm'r,* 77 T.C. 1305, 1312 (1981). Further, the court in *Friedlander* stated that

the source of the capital has not been considered relevant for purposes of section 1348. The purpose of the test under section 1348 is to determine whether the income is attributable to the personal services of the taxpayer or whether such income was earned by capital, and in light of that objective, the source of the capital has no significance.

**3.** *Cf. Moore v. Comm'r,* 71 T.C. 533, 540 (1979) ("[I]t is our view that all retail grocery businesses employ capital as a material income producing factor. We will not differentiate among retail groceries on the basis of how profitably they are operated.").

**4.** The Hickses argue that the district court erred by comparing the cost of their goods sold to their gross receipts. They suggest that the court should have focused exclusively on their gross income. As our opinion makes clear, even ana-

lyzing the figures as the Hickses suggest would not have altered the fact that their income was in part produced by capital. Moreover, the Hickses are simply wrong in asserting that the district court improperly examined the figures. *See, e.g., United States v. Van Dyke,* 696 F.2d 957 (Fed.Cir.1982); *Hutcheson v. United States,* 540 F.Supp. 880 (M.D.Ala.1982). Finally, the quantity of the Hickses' own capital, while not especially staggering, is by no means insignificant.

718 F.2d at 297 (quoting *Gaudern,* 77 T.C. at 1312). We decline the Hickses' invitation to rule here for the first time that the source of the capital has profound importance and that the Hickses' use of capital concededly not their own therefore renders their use of that capital irrelevant for purposes of section 1348. *See also Moore v. Comm'r,* 71 T.C. 533, 538 (1979) ("The general rule [is] that capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business."); *Bruno v. Comm'r,* 71 T.C. 191, 199 (1978) ("[C]apital is a material income-producing factor if a 'substantial' portion of the gross income of the business is attributable to the employment of capital in the business conducted by the enterprise."); *Robida v. Comm'r,* 460 F.2d 1172, 1174 (9th Cir.1972) ("The key element is the presence or absence of capital as the income-producing factor....").

The Hickses' customers, like the customers of the general contractor in *Hutcheson v. United States,* 540 F.Supp. 880 (M.D. Ala.1982), "looked to the company for both services and materials, and both services and materials were purchased from the company in the form of a building or repairs to a building." 540 F.Supp. at 883. The Hickses agreed to build buildings. Doubtless their reputations for getting the job done, and getting it done on time, were important, but their contractual obligation was nonetheless to build. The personal services they provided cannot, on the facts of this case, be separated from their contractual obligation to build a building. Capital was a material factor in the production of their income. Accordingly, the judgment of the district court is AFFIRMED.