EDWARD S. SMITH, Circuit Judge.
 

 This is an appeal by Mark W. Curry, Jr. (taxpayer),
 
 [1]
 
 from the March 26, 1985, judgment of the United States Claims Court that section 911(b) of the Internal Revenue Code of 1954 (code)
 
 [2]
 
 applied to limit taxpayer’s personal service income to 30 percent of his earnings from the operation of Curry’s Funeral Home. We affirm.
 

 Issue
 

 The issue is whether the Claims Court erred in its finding that capital was a material income-producing factor in taxpayer’s business.
 

 Background
 

 This suit for refund arose under section 1348 of the code, which section limited the maximum marginal income tax rate on personal service income to 50 percent for the taxable year in issue, 1978.
 
 [3]
 
 The relevant facts were undisputed and the case was presented to the Claims Court after 2 days of oral testimony. There was also a joint stipulation of facts. The judgment of the Claims Court (Judge Yock), ruling in favor of the Government, was filed March 26, 1985. The taxpayer timely filed his notice of appeal on May 20, 1985. Jurisdiction of this court is derived under 28 U.S.C. § 1295(a)(3).
 

 The parties are in agreement that the facts pertinent to this appeal are as follows:
 

 During the tax year 1978, taxpayer owned and operated Curry’s Funeral Home in Tampa, Florida, as a sole proprietorship. Taxpayer is a licensed embalmer and fu
 
 *649
 
 neral director in the State of Florida. The funeral home consists of a lobby, several viewing rooms where family and friends can view the deceased, a chapel, a casket display room where about 20 caskets are displayed for sale, a preparation room where the embalming is done, and administrative offices. The lobby and reposing rooms are furnished with sofas, chairs, and lamps to create a home-like atmosphere.
 

 Taxpayer testified that the building and land were worth approximately $225,000 in 1978, and the furnishings were worth approximately $25,000. The casket inventory was worth about $10,000. Curry’s Funeral Home also owned vehicles worth between $50,000 and $55,000 in 1978.
 

 Taxpayer employed four individuals in 1978 who were licensed embalmers and funeral directors. As such, each was qualified to perform all of the services and functions involved in the operation of a funeral home.
 

 The price of a funeral is set out in a Funeral Purchase Agreement (agreement). It lists the price of the casket and other items purchased, the charge for services, and other items involving cash advances, such as clergy fees and flowers. An agreement was prepared for each of approximately 500 funerals conducted by Curry’s Funeral Home in 1978. In setting the price for the caskets, taxpayer normally operated on a standard 100 percent markup over cost, plus $200. Less expensive caskets (those in the $80-$100 price range) were usually resold for approximately $250.
 

 In addition, taxpayer carried an inventory of clothing for the deceased. These articles were specially made and purchased from a funeral supply house. The clothing was sold by taxpayer at a markup over cost of 100 percent. Concrete vaults were sold at a markup over cost of 100 percent. Taxpayer also sold urns used for cremation at a 100 percent markup.
 

 The agreement used in 1978 segregated the charge for services and the use of facilities and equipment from the price of the merchandise sold. However, the agreement did not provide a breakdown or itemization for the cost of each service or for the use of particular facilities and equipment. Instead, a single lump-sum amount was charged for
 

 professional services including care and preparation of the deceased, consultation with family and clergymen, arranging and direction of the visitation and/or funeral, preparation and filing of necessary notices, authorizations and consents, and other services and attendance prior to, during and following the funeral or other disposition * * *, local transportation of the deceased and use of establishment facilities and equipment.
 

 The amount charged for professional services varied, depending on what services, facilities, and equipment were actually used. The percentage of the total charge for a complete or traditional funeral (exclusive of casket and other merchandise) attributable to services, facilities, and equipment is as follows:
 
 [4]
 

 Professional services 30%
 

 Embalming and other preparation of deceased 18%
 

 Organist 2%
 

 Police escort 3%
 

 Use of facilities, including reposing room and chapel 20%
 

 Use of automotive vehicles, including hearse, limousine, service car, and flower van 24%
 

 Supplies 3%
 

 100%
 

 Although the Funeral Purchase Agreement specified that payment of the funeral bill was required to be made within 30 days, only about 30 percent of the families paid within this period. For the remaining 70 percent, taxpayer effectively financed the cost of the casket and other expenses before the collection of the accounts. This required a significant amount of working capital.
 

 On his 1978 income tax return, taxpayer treated all of the net profits from Curry’s Funeral Home as personal service income.
 
 *650
 
 An Internal Revenue Service audit of that return led to a proposed deficiency based on an adjustment in the calculation of the maximum tax, limiting the personal service income of taxpayer to 30 percent of his earnings of $223,128.77 from the operation of Curry’s Funeral Home. Taxpayer paid the income tax attributable to the adjustment, and then filed a claim for refund of the additional tax paid. The claim for refund was disallowed.
 

 After denial of the claim for refund, taxpayer filed an action for refund in the United States Claims Court. The Claims Court found that there was a substantial investment in capital assets by taxpayer. The court also found that the use of capital assets was directly responsible for a substantial portion of the gross income of the business. The court held that the 30 percent limitation set out in section 911(b) applied, because capital was a material income-producing factor in the operation of Curry’s Funeral Home. The Claims Court entered a final judgment in favor of the United States on March 26, 1985, from which taxpayer appeals.
 

 Capital As A Material Income-Producing Factor
 

 Section 1348 of the code provides that the maximum marginal tax rate on personal service income is 50 percent.
 
 [5]
 
 In this context, section 1348 defines personal service income as any income which is earned income within the meaning of section 911(b). Section 911(b) provides:
 

 For purposes of this section, the term “earned income” means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.
 

 The applicable Treasury regulation under section 1348 provides guidance on the question whether capital is a material income-producing factor in a business. Section 1.1348-3(a)(3)(ii) (26 C.F.R.) states that:
 

 (ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case.
 
 Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business,
 
 as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general,
 
 capital is not a material income-producing factor where gross income of the btisiness consists principally of fees, commissions, or other compensation for personal services performed by an individual.
 
 Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental
 
 *651
 
 to his professional practice. [Emphasis supplied.]
 

 The Claims Court found that taxpayer had a substantial capital investment in his business, as well as that capital was directly responsible for producing a substantial portion of the funeral home’s income.
 

 Standard of Review
 

 The question whether capital is a material income-producing factor is a factual one, to be determined from all the facts and circumstances of the case.
 
 [6]
 
 Therefore, the trial court’s findings must not be set aside unless they are clearly erroneous.
 
 [7]
 
 The Supreme Court established a basic principle concerning the clearly erroneous standard in
 
 United States v. United States Gypsum Co.
 

 [8]
 

 9
 
 holding that “[a] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” The Supreme Court recently discussed the application of this standard in
 
 Anderson v. City of Bessemer City.
 

 [9]
 

 If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous. * * *
 

 The question then becomes whether there is plausible evidence on the record which supports the Claims Court’s finding that capital was a material income-producing factor in taxpayer’s funeral home business.
 

 Appellant argues that capital was not a material income-producing factor because he is a professional within the meaning of Treasury Regulation § 1.1348-3(a)(3)(ii). He claims that even a substantial investment in capital does not affect the characterization of income as earned income where a professional is involved. Appellee argues that the issue is not whether taxpayer is a professional but, rather, whether capital is a material income-producing factor in his business.
 

 It is clear from the statute and the regulations that taxpayer’s status as a professional is not the determining question. It is not the status or label of “professional” that permits doctors, dentists, lawyers, architects, accountants, and others to treat all of their income as earned income; instead, it is the nature of their business. Despite what may be a substantial investment in capital, these individuals are being paid essentially for personal services. It is the personal service rendered by them which produces the income, and the capital investment is only incidental thereto. Therefore, a determination that the taxpayer is a professional would not decide this case.
 

 Many businesses involve both personal services and the use of capital.
 
 [10]
 
 In these cases it must be determined whether capital is a material income-producing factor. In
 
 United States v. Van Dyke,
 

 [11]
 

 this court stated a test for deciding whether capital is a material income-producing factor:
 

 [I]t must be shown that the investment in capital assets is substantial, or that the use of the capital assets in a particular business is such that it is directly
 
 *652
 
 responsible for a substantial portion of the gross income of the business. * * *
 

 Courts have considered several factors in making this determination: the amount of the capital investment, the source of the income, how the income is used in the business, whether capital is necessary for the operation of the business, a comparison of the amount of capital to the amount of personal services, and whether the materials are altered by the personal efforts of the owner or his employees.
 
 [12]
 

 The Claims Court found that taxpayer’s capital investment of $315,000 was a substantial investment. Taxpayer does not dispute the amount of the investment. We cannot conclude that this finding was clearly erroneous. The court also found that the use of capital assets in taxpayer’s business was directly responsible for a substantial portion of the gross income of the business. The evidence showed that about 50 percent of taxpayer’s gross income came directly from the sale of merchandise.
 
 Van Dyke,
 
 cited by appellant in support of his case, may be distinguished on this point. In
 
 Van Dyke,
 
 the taxpayer used substantial skill and effort to change the raw materials into the finished products he sold. Here, in direct contrast, the caskets, clothing, and other merchandise were sold without any change.
 

 In addition, taxpayer stipulated that almost half of the remaining 50 percent was received for the use and rental of the facilities. Therefore, over 70 percent of taxpayer’s gross income came from the use of capital in the business. We cannot say that the Claims Court’s finding in this regard was clearly erroneous.
 

 Taxpayer’s own brief supports the court’s finding. In his discussion of the applicability of the
 
 Van Dyke
 
 decision, taxpayer included the following quote from
 
 Van
 
 Kalker:
 
 [13]
 

 “[CJapital employed in the use of auxiliary equipment,
 
 which is not income-producing in its own right,
 
 may be considered in the nature of ‘tools of the trade,’ where the income-producing activity is fundamentally one of providing skilled, specialized and essentially personal services____” * * * [Emphasis supplied.]
 

 In order for capital used in a business to be incidental to that business, it must not be income-producing in its own right. Here, it is undisputed that the sale of merchandise produced a substantial amount of taxpayer’s gross income. Thus, taxpayer has failed to prove that the use of capital was incidental to the performance of personal services in his funeral home.
 

 Taxpayer attempts to draw an analogy between his position and that of the taxpayer in
 
 Ketter v.
 
 Commissioner,
 
 [14]
 
 The analogy is flawed, however, because the Tax Court specifically noted in
 
 Ketter
 
 that “[t]he partnership carried no inventory for sale to customers, and the value of its equipment, by comparison with its gross income and employee salary expenses, was minimal.” That finding is in direct contrast with taxpayer’s position. Taxpayer did sell merchandise from inventory, and the value of the capital investment is not small when compared with either gross income or employee salary expenses.
 
 [15]
 

 Taxpayer correctly asserts that it is not fatal to his claim that his employees performed some professional services for him.
 
 [16]
 
 While this is true, it does not help taxpayer’s case. The crucial question is whether capital is a material income-pro
 
 *653
 
 ducing factor in his business. Since that is the case, it is immaterial that his employees could render some professional services without his losing the personal service income benefit.
 

 It is also true that where there is a sale of goods, capital is not automatically material in the business;
 
 [17]
 
 although again, this does not help taxpayer. It was not simply the fact that goods were sold that caused taxpayer’s earned income to be limited to 30 percent. The important factor was that a substantial amount of taxpayer’s gross income came from the sale of goods.
 

 Taxpayer also argues that the Claims Court improperly divided the funeral into its component parts. Taxpayer claims that the funeral should be considered as a whole because “[i]t is the total cost of the funeral that many families have in mind that they feel they can afford to pay for the funeral.” Even if this is true as a practical matter, it makes no difference in the analysis under section 911(b). For income tax purposes, it does not matter if the consumer thinks he is buying a service or a combination of goods and services. It is the reality of the transaction that governs its tax consequences.
 
 [18]
 
 Here, there was a sale of goods combined with personal services. Therefore, the Claims Court correctly analyzed the transaction.
 

 Finally, taxpayer argues that his entire income should be treated as earned income because he is an “artist” who tries to create a “pleasant memory picture.” Taxpayer relies on
 
 Tobey v.
 
 Commissioner
 
 [19]
 
 to support his position. Again, the analysis proceeds not on whether someone is or is not an “artist” but, rather, whether capital is a material income-producing factor in the business.
 
 [20]
 

 Taxpayer’s conduct of his business in a conscientious, hardworking, and professional manner is not in itself a sufficient basis for avoiding the 30 percent limitation imposed by section 911(b). As the Tax Court stated in
 
 Gaudern v.
 
 Commissioner:
 
 [21]
 

 The impressive success of Western Columbia was no doubt due to the extensive personal services furnished by the petitioner. He worked long hours, and he made use of the many contacts which he had established during his career as a professional bowler. It appears that his conduct of the business reflects considerable ingenuity, industry, and business acumen on his part. * * * Nevertheless, the fact that the petitioner contributed material personal services to the operation of the business does not entitle him to treat the entire profits as earned income under section 1348; if capital was a material income-producing factor, he is subject to the 30-percent limitation, notwithstanding the importance of his personal services. * * *
 

 Conclusion
 

 Section 911(b) limits the amount of earned income subject to the maximum marginal tax rate of 50 percent to 30 percent where capital is a material income-producing factor. Capital was a material income-producing factor in taxpayer’s business. Therefore, section 911(b) properly applied to taxpayer’s income in 1978. The judgment of the United States Claims Court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Bertha G. Curry is a party to this action solely because she filed a joint income tax return with her husband for 1978. The issue in this case involves the business operated by Mark Curry. Accordingly, "appellant” or "taxpayer” where used herein refers to Mark Curry.
 

 [2]
 

 . 26 U.S.C. (1976). Section 911(b) was rewritten and moved to § 911(d)(2) for taxable years beginning after December 31, 1981. Economic Recovery Tax Act of 1981, Pub.L. No. 97-34, § 111(a), 95 Stat. 172, 190.
 

 [3]
 

 . Section 1348 was repealed for the taxable years beginning after December 31, 1981, when the highest marginal rate on all income for individuals was reduced from 70 percent to 50 percent. Economic Recovery Tax Act of 1981, Pub.L. No. 97-34, § 101(c), 95 Stat. 172, 183.
 

 [4]
 

 . The 1978 list is unavailable. The percentages shown are based on current prices.
 

 [5]
 

 . Section 1348(a)(1) provides:
 

 "(a) General rule.—If for any taxable year an individual has personal service taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of—
 

 "(1) the tax imposed by section 1 on the highest amount of taxable income on which the rate of tax does not exceed 50 percent[.]”
 

 [6]
 

 . Treas.Reg. § 1.1348—3(a)(3)(ii) (1976);
 
 see also Bruno v. Commissioner,
 
 71 T.C. 191 (1978);
 
 Rousku v. Commissioner,
 
 56 T.C. 548 (1971).
 

 [7]
 

 . FED.R.CIV.P. 52(a);
 
 see also Heisig
 
 v.
 
 United States,
 
 719 F.2d 1153 (Fed.Cir.1983).
 

 [8]
 

 .
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948);
 
 see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm’n,
 
 718 F.2d 365 (Fed.Cir. 1983).
 

 [9]
 

 .
 
 Anderson
 
 v.
 
 City of Bessemer City,
 
 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).
 

 [10]
 

 .
 
 Van Kalker
 
 v.
 
 Commissioner,
 
 54 A.F.T.R. 2d (P-H) If 84-5247 (7th Cir.1984).
 

 [11]
 

 .
 
 United States
 
 v.
 
 Van Dyke,
 
 696 F.2d 957, 961-62 (Fed.Cir.1982).
 

 [12]
 

 .
 
 Friedlander
 
 v.
 
 United States,
 
 718 F.2d 294, 297 (9th Cir.1983);
 
 Van Dyke,
 
 696 F.2d at 961;
 
 Van Kalker,
 
 54 A.F.T.R.2d at 5673-74.
 

 [13]
 

 .
 
 Van Kalker,
 
 54 A.F.T.R.2d at 5674 (quoting
 
 Smith v. Commissioner,
 
 52 T.C.M. (P-H) ¶ 83-093 (1983)).
 

 [14]
 

 .
 
 Ketter v. Commissioner,
 
 70 T.C. 637, 644-45 (1978).
 

 [15]
 

 . The capital investment was approximately $315,000. The gross income of Curry’s Funeral Home was $558,714.81 in 1978. The salaries of the four licensed embalmers and funeral directors ranged from $13,223 to $18,613. The salaries of the apprentices ranged from $3,300 to $7,839.
 

 [16]
 

 . Treas.Reg. § 1.1348-3(a)(2) (1976).
 

 [17]
 

 .
 
 See Van Dyke,
 
 696 F.2d 957;
 
 Van Kalker,
 
 54 A.F.T.R. 2d ¶ 84-5247.
 

 [18]
 

 .
 
 Blackstone Realty Co.
 
 v.
 
 Commissioner,
 
 398 F.2d 991, 996 (5th Cir.1968).
 

 [19]
 

 .
 
 Tobey v. Commissioner,
 
 60 T.C. 227 (1973).
 

 [20]
 

 .
 
 Id.
 
 at 231. In
 
 Tobey,
 
 it was stipulated that capital was not a material income-producing factor.
 

 [21]
 

 .
 
 Gaudern v. Commissioner,
 
 77 T.C. 1305, 1310 (1981).