GEORGE E. BARNES AND FLORENCE H. BARNES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barnes v. Commissioner
Docket No. 108-86.
United States Tax Court
T.C. Memo 1987-544; 1987 Tax Ct. Memo LEXIS 536; 54 T.C.M. (CCH) 972; T.C.M. (RIA) 87544; October 26, 1987. Loren E. Juhl, for the petitioners. Janine M.Poronsky, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent's determined the following deficiencies in petitioner's Federal income tax: Year
Deficiency
1976
$ 6,375.70
1977
5,258.47
1978
934.71
The sole issue for decision is whether capital was a material income-producing factor in petitioner George E. Barnes' brokerage firm. Background
This case was submitted fully stipulated, and the facts set forth in the stipulation are incorporated as our findings by this reference. Petitioners George E. Barnes (petitioner) and Florence H. Barnes were residents of Florida when their petition was filed. Petitioner was a partner in the brokerage firm of Wayne Hummer & Co. (the firm) during the firm's fiscal years ended March 31, 1976, 1977, and 1978. The firm did not own securities for its own account or for resale, and did not act as an underwriter of securities. The firm filed orders to buy and sell securities for customers through securities exchanges or the over-the-counter markets, for which it received commissions, or through principal *538 transactions with other brokers, for which it received "spreads" equivalent to commissions. Some of the firm's customers maintained margin accounts with the firm and paid the firm interest on such accounts. The magin accounts were financed partly out of firm capital and partly out of money that the firm borrowed from banks using securities in the accounts as collateral. For the years in question, the firm had interest income from customers who carried margin accounts as follows: Amount
Interest
Interest
Net
Year
Borrowed
Received
Paid
Interest
1976
$ 2,700,000
$    618,774
$ 336,798
$ 281,976
1977
6,350,000
714,983
265,329
449,654
1978
8,300,000
1,063,985
506,449
557,536
Net interest income represented the following percentages of the firm's gross income: Net
Interest
Gross
Net
as a % of
Year
Income
Interest
Gross Income
1976
$ 4,723,530
$ 281,976
5.97%
1978
4,767,980
449,654
9.40%
1978
4,999,810
557,536
11.20%
Gross interest income represented the following percentages of the firm's gross income: Gross
Interest
as a % of
Gross
Gross
Gross
Year
Income
Interest
Income
1976
$ 4,723,530
$    618,774
13.10%
1977
4,767,980
714,983
15.00%
1978
4,999,810
1,063,985
21.30%
*539 In a notice of deficiency, respondent determined that because capital was material to the production of the firm's income, petitioners may treat only 30 percent of their shares of the firm's profits as personal service income subject to the 50-percent maximum tax rate under section 1348. [1]
Discussion
During the years in issue, many forms of income were taxed at marginal rates as high as 70 percent. Section 1348 provided individual taxpayers with limited relief. That section stated that "personal service income" was to be taxed at marginal rates no higher than 50 percent. [2] For purposes of his case, "personal service income" was defined to include "wages, salaries, or professional fees, and other amounts received for personal services actually rendered." Sections 911(b) and 1348(b)(1)(A). [3] The parties agree that petitioner's distributive share of his firm's income from commissions and fees constitutes "personal service income" for purposes of section 1348. *540 The parties also agree that interest earned on the firm's customer margin accounts was at least partially derived from the use of capital. For taxpayers engaged in trades or businesses in which capital was a "material income-producing factor," section 1348(b)(1)(A) placed a mechanical 30 percent cap on income eligible for favorable treatment as "personal service income." Sections 1348(b)(1)(A) and 911(b); section 1.1348-3(a)(2)(i), Income Tax Regs.[4] Respondent contends that capital was "material" to the production of the firm's income and proposes to limit petitioner's "personal service income" to 30 percent of his share of the firm's net profits. Petitioner argues that capital was not a "material" income-producing factor for the firm. We agree with petitioner. The *541 regulations provide limited guidance. Section 1.1348-3(a)(3)(ii), Income Tax Regs., states: (ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. [Emphasis *542 supplied.]
The criteria set forth in the regulation essentially represent two sides of the same coin; section 1.1348-3(a)(3)(ii), Income Tax Regs., draws a distinction between businesses in which capital itself produces income and those in which the employment of capital is merely incidental to the provisions of services. Where capital is not income producing in its own right and customers pay for the services of a professional using the capital, capital is not a material income-producing factor. Bruno v. Commissioner,71 T.C. 191, 200-201 (1978) (bail bonding). Respondent observes that capital need not be the sole source of a taxpayer's business income; the 30-percent limitation applies whenever capital is found to be material. Gaudern v. Commissioner,77 T.C. 1305, 1310 (1981). He consequently argues that "[t]he mere fact that petitioners' firm involved personal service brokerage activities * * * does not preclude a determination that capital was also a material income-producing factor in the firm." Respondent is of course correct. This Court has also recognized, however, that "[f]ew modern businesses are conducted without the use *543 of capital in some form or other, and it cannot be assumed that Congress intended such a narrow reading of the term 'capital' under section 1348." Bruno v. Commissioner,71 T.C. at 201. Most businesses fall somewhere along a continuum of capital use. To be a "material" income-producing factor, capital must directly or indirectly generate a "substantial" portion of the firm's gross income. Section 1348 thus demands an intensely factual inquiry. In making this inquiry, courts have typically considered the nature of the business as well as the form of the income. See Bruno v. Commissioner,71 T.C. at 198. Where business receipts "were not fees for the rendering of personal services but were prices paid" for the resale or installation of essentially unaltered materials, we have held that capital was material to the production of the taxpayer's income. Gaudern v. Commissioner,77 T.C. at 1311 (bowling supplies); see Curry v. United States,804 F.2d 647 (Fed. Cir. 1986) (funeral home income attributable to sale of inventory); Hicks v. United States,787 F.2d 1018 (5th Cir. 1986) (general contractor); *544 Friedlander v. United States,718 F.2d 294 (9th Cir. 1983) (jewelry wholesaler); Moore v. Commissioner,71 T.C. 533 (1979) (grocery store); Rousku v. Commissioner,56 T.C. 548 (1971) (auto shop). [5] Conversely, "where the income-producing activity is fundamentally one of providing skilled, specialized and essentially personal services," courts have held that capital was not material to the production of the taxpayer's income. Van Kalker v. Commissioner,804 F.2d 967, 970 (7th Cir. 1984) (quoting Smith v. Commissioner,T.C. Memo. 1983-83), revg. 81 T.C. 91 (1983) (custom-made wrought iron railings); see also United States v. Van Dyke,696 F.2d 957 (Fed. Cir. 1982) (taxidermy); Zahler v. Commissioner,684 F.2d 356 (6th Cir. 1982), revg. and remanding a Memorandum Opinion of this Court (commission sales). *545 Respondent cites Rev. Rev. Rul. 78-306, 1978-2 C.B. 218. Revenue rulings are merely statements of respondent's position with respect to a specific factual situation and are not precedent in this Court. Crow v. Commissioner,85 T.C. 376, 389 (1985), and cases cited therein. The ruling, in any event, is not inconsistent with the factual analyses set forth in the many cases decided under section 1348. The partnership discussed in the Revenue Ruling was engaged in investment banking, underwriting, and investment on its own account, as well as in investment counseling and securities brokerage. Because the partnership employed "substantial amounts of capital" in each of these activities, respondent concluded that capital was a material income-producing factor within the meaning of section 911(b). The activities of petitioner's firm were more limited. Petitioner's firm engaged in the business of investment management and counseling. The firm did no underwriting, carried no inventories of securities, and made no investments for it own account. The firm bought, sold, and held securities on behalf of its customers. On the basis of this record, we find that *546 the firm's business was essentially one of providing services. Although the firm arranged bank financing for its customers, capital was not vital to the production of any substantial portion of the firm's income. Customers purchased securities on margin in order to avail themselves of the firm's professional skills. Maintenance of customer margin accounts was part and parcel of the firm's brokerage activity; securities purchased on margin were simply the materials with which the firm worked. The firm's income consisted principally of commissions and fees; interest earned on the margin accounts was incidental to the firm's principal sources of revenue. We conclude that capital was not a material income-producing factor for purposes of section 1348. Decision will be entered for the petitioners.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect during the years in issue, except as otherwise noted. ↩
2. For the years 1977 and 1978, the pertinent provisions of section 1348 read as follows: SEC. 1348. 50-Percent Maximum Rate on Personal Service Income. (a) General Rule. -- If for any taxable year an individual has personal service taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of -- (1) the tax imposed by section 1 on the highest amount of taxable income on which the rate of tax does not exceed 50 percent, (2) 50 percent of the amount by which his personal service taxable income exceeds the amount of taxable income specified in paragraph (1) of this subsection, and (3) the excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his personal service taxable income. (b) Definitions. -- For purposes of this section -- (1) Personal service income. -- (a) In general. -- The term "personal service income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b) or which is an amount received as a pension or annunity. For taxable years beginning before December 31, 1976, section 1348 provided for a 50-percent maximum tax rate on "earned income." Section 1348 was amended by section 302(a) of Pub. L. 94-455, 90 Stat. 1520, 1554 to provide for a 50-percent maximum tax rate on "personal service income." In the context of this case, there is no substantive difference. ↩
3. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. * * * (b) Definition of Earned Income. -- For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered * * * In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. ↩
4. The 30-percent limitation was removed for years after 1978 by the Revenue Act of 1978, Pub. L. 95-600, sec. 442(a), 92 Stat. 2978. Section 1348 was repealed in its entirety for taxable years beginning after December 31, 1981, when the highest marginal rate for all forms of income was reduced from 70 percent to 50 percent. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 101(c)(1), 95 Stat. 183. ↩
5. See also Albright v. Commissioner,T.C. Memo. 1985-485 (sales of developed real estate); Black v. Commissioner,T.C. Memo. 1983-245 (sales of developed real estate); Pilkington v. Commissioner,T.C. Memo 1983-93 (paint contracting business); Nelson v. Commissioner,T.C. Memo. 1982-361, affd. 767 F.2d 667 (10th Cir., 1983) (paint contracting business); Wilson v. Commissioner,T.C. Memo. 1982-89, affd. per order (10th Cir., Apr. 29, 1983) (egg-producing business); Gullion v. Commissioner,T.C. Memo. 1982-106 (concrete flatwork business); McGowan v. Commissioner,T.C. Memo. 1982-65 (sanitary landfill operation); Treatman v. Commissioner,T.C. Memo. 1981-74 (mail order business); Novikoff v. Commissioner,T.C. Memo. 1980-330↩ (movie theater business).